Bergax, J.
Appellant Dow Chemical Company is defendant in an action for negligently causing the death of plaintiff’s husband, and it is third-party plaintiff in a claim over against the husband’s employer George Urban Milling Company. Another claim over by appellant against McLeod Industrial Fumigators & City Exterminators, Inc. is not involved in this appeal.
Dow is the manufacturer of chemicals. It produced methyl bromide, a penetrating and poisonous fumigant used for con *146 trol of storage insects and mites. This product is labeled by Dow as poisonous, dangerous and highly volatile. Urban used it to fumigate a grain storage bin and shortly after fumigation it directed-plaintiff’s husband, its employee, to enter the fumigated bin to clean it. In doing this he was exposed to the poison which resulted in his death.
The negligence charged to Dow by plaintiff is that the poison was not properly labeled to warn users of its dangers; in failing to warn and instruct users that entry without protection into an enclosed area where the poison had been employed would be dangerous; and in failing to warn that use in an enclosed structure should be followed by effective dissipation of vapors or the lapse of time enough to allow dissipation.
Dow’s answer to the complaint is both a denial of its own negligence and an allegation of affirmative negligence by decedent. Its third-party complaint against George Urban Milling Company alleges that the methyl bromide used by Urban was properly labeled with full warning of its dangerous nature; that it had furnished Urban with printed material relating to its use in fumigation and that Urban had access to and was aware of this material.
From this it is alleged by Dow that if decedent’s death was caused by negligence it was the result of the “ active and primary negligence ” of Urban and the negligence of Dow “ if any ” was “ merely passive and secondary ”.
The negligence of Urban is alleged by Dow to have been its improper precautions in fumigating with methyl bromide; in using for this work untrained personnel; in failing to follow instructions on the label and the literature available to it; in failing to test the premises after fumigation and to properly aerate it afterward. If plaintiff recovers Dow asks judgment over against Urban “ for the full amount of such judgment ”.
Urban moved at Special Term to dismiss the third-party complaint as to it. This motion was denied. On Urban’s appeal, the Appellate Division unanimously reversed and dismissed that pleading on the ground liability over would not be allowed if the plaintiff established that Dow’s negligence in mislabeling and insufficient warning contributed to the accident.
This would be, the court noted, ‘ ‘ active negligence of a character which would bar Dow from recovery against the user of *147 the product ’ ’ even though the user also was negligent. That view is consistent with decisions of this court (e.g., Jackson v. Associated Dry Goods Corp., 13 N Y 2d 112, 116; Colon v. Board of Educ. of City of N. Y 11 N Y 2d 446, 451; Bush Term. Bldgs. Co. v. Luckenbach S. S. Co., 9 N Y 2d 426, 430 et seq.; Putvin v. Buffalo Elec. Co., 5 N Y 2d 447; McFall v. Compagnie Mar. Belge, 304 N. Y. 314, 329-330).
The “active-passive” test to determine when indemnification will be allowed by one party held liable for negligence against another negligent party has in practice proven elusive and difficult of fair application. The terms “primary” and ‘ ‘ secondary ’ ’ negligence, also used in the Dow pleading, have been regarded as more accurate and technically appropriate.
But the policy problem involves more than terminology. If indemnification is allowed at all among joint tort-feasors, the important resulting question is how ultimate responsibility should be distributed. There are situations when the facts would in fairness warrant what Dow here seeks — passing on to Urban all responsibility that may be imposed on Dow for negligence, a traditional full indemnification. There are circumstances where the facts would not, by the same test of fairness, warrant passing on to a third party any of the liability imposed. There are circumstances which would justify apportionment of responsibility between third-party plaintiff and third-party defendant, in effect a partial indemnification.
The basic theoretical bar at common law to any apportionment among those who committed torts, either by indemnity or by contribution, was the unwillingness of the law as a matter of policy to make relative value judgments of degrees of culpability among wrongdoers (42 C. J. S., Indemnity, § 27, subd. a, p. 606). The rule springs from the celebrated decision in Merryweather v. Nixan (8 Durn. & E. 186; 101 Eng. Rep. 1337 [K. B., 1799]). (See Reath, Contribution Between Persons Jointly Charged for Negligence — Merryweather v. Nixan, 12 Harv. L. Rev. 176-178; and note as to subsequent British and American treatment of the rule in 65 Col. L. Rev. 123, Toward A Workable Rule of Contribution, n. 2; and Allocation of Loss, 41 So. Cal. L. Rev. 728, 730; and see general discussion by Prosser, The Law of Torts [4th ed.], addressed to contribution, indemnity and apportionment of damages, §§ 50, 51, 52.)
*148 Consistently with this theory at common law, the wrongdoer selected by the injured party for suit must have succeeded in avoiding any part of responsibility; and otherwise he would have to assume all of it without redress. This doctrine no longer is applied rigorously. For one thing the statute has altered the basic policy against contribution by allowing one joint tort-feasor subjected to judgment, to compel equal contribution by another who is subjected to the same judgment (CPLR 1401).
The effective application of this statute depends, however, on the adjudication of joint tort responsibility which, as a matter of practice, depends in turn largely on the willingness or ability of the injured party to sue more than one of those responsible for his damage (see discussion of this aspect of the problem in Putvin v. Buffalo Elec. Co., 5 N Y 2d, p. 453, supra).
The “ active-passive ” negligence concept as it has developed in New York is itself an abandonment of the rigorous common-law policy; since it allows full indemnity in favor of one found to be passively negligent against another found to be actively negligent who could be brought into the action by the passively negligent party and required to answer the claim over.
This process in practical application became a measure of degree of differential culpability, although the degree was a large one. The “ passive ” negligent act was treated by the court as less a wrong than the ‘ ‘ active ’ ’ negligent act. The result has been that there has in fact emerged from the statutory change and from the judicial decisions an actual apportionment among those who participate responsibly in actionable torts.
This change in concept and the persistent criticism of the active-passive basis of apportioning liability between defendants found responsible in negligence make it useful for the court to re-examine the basic fairness of the uncertain and largely unpredictable nature of the measure of redress that has been allowed by indemnity in favor of a party found negligent against another who played an effective role in causing the damage.
The conclusion reached is that where a third party is found to have been responsible for a part, but not all, of the negligence for which a defendant is cast in damages, the responsibility *149 for that part is recoverable by the prime defendant against the third party. To reach that end there must necessarily be an apportionment of responsibility in negligence between those parties.
The adjudication is one of fact and may be sought in a separate action (cf. Westchester Light. Co. v. Westchester County Small Estates Corp., 278 N. Y. 175) or as a separate and distinguishable issue by bringing in the third party in the prime action pursuant to CPLR 1007.
The procedural mechanism allowing a defendant to bring in a third party who may be liable to him on “ all or part ” of the plaintiff’s claim (CPLR 1007, substantially taken from former Civ. Prac. Act, § 193-a, subd. 1) was limited in Fox v. Western N. Y. Motor Lines (257 N. Y. 305) virtually to exclude the right of one charged with negligence to bring in another in a claim over. This was on the basis of the inability of one cast in damages to seek recovery over from another as a matter of law.
But Westchester Light. Co. v. Westchester County Small Estates Corp. (278 N. Y. 175, supra) overruled the substantive basis of Fox by holding that such a claim for indemnity could be asserted in a separate action after judgment, and in a series of other cases the right to some form of relief over has been sustained, including the theory of implied obligation to indemnify (McFall v. Comyagnie Mar. Belge, 304 N. Y. 314, 328, supra), or breach of duty (p. 329), or the absence of a yarticiyes criminis relationship (Tipaldi v. Riverside Mem. Chapel, 273 App. Div. 414, 418, affd. 298 N. Y. 686).
It is fair to say that the rather widespread dissatisfaction with the inequity of result, as well as the looseness of terminology, in the “ active-passive ” axis foreshadowed for the Bar an attempt at realignment of the rule. This is to be observed both in some of the judicial opinions that have articulated the struggle toward fairness, and in professional commentaries.
In McFall v. Comyagnie Mar. Belge (304 N. Y. 314, supra) the court permitted indemnity through recovery over by a charterer of a ship found negligent, among other things, in failing to warn stevedores in loading of its cargo known to be dangerous, of the peril in the loading (p. 327).
*150 What seems decisive in the actual decision is that the “ factual disparity between the delinquency ” of the ship charterer and other defendants “is so great ’ ’ that indemnity should follow, although the court employed “ active ” and “ passive ” negligence as operative terms (p. 330, opn. by Conway, J.).
The term “ factual disparity ” was referred to again in Putvin v. Buffalo Elec. Co. (5 N Y 2d 447, supra) by Chief Judge Conway in an analysis of McFall (supra) and the active-passive nexus (pp. 458-459).
This differential in quality of responsibility has been applied in a number of decisions tending to sustain the statement that there could be indemnity where a party 1 ‘ was less culpable than the principal wrongdoer, although both are equally liable to the person injured” (42 C. J. S., Indemnity, § 27, subd. b, p. 606, and cases assembled under n. 30).
It has been observed that the doctrine of indemnity “ evolved in the unnatural surroundings of an inflexible rule against contribution” and that courts have relied on “artificial distinctions” such as “active-passive” and “misfeasance-nonfeasance ” (65 Col. L. Rev. 123, 126, op. cit.).
In an analysis of the California rules affecting contribution and indemnity it was noted by Robert Gr. Werner (Contribution and Indemnity, 57 Cal. L. Rev. 490, 516): “As long as our present tort system is retained, an effective contribution and indemnity scheme is necessary to handle the growing problems created by multiple tort liability. * * * The present system runs counter to tort policy goals of deterrence, equitable loss sharing by all the wrongdoers, effective loss distribution over a large segment of society, and rapid compensation of the plaintiff—as well as the judicial economy interest in settling all matters arising out of the same transaction in one proceeding.”
There is an analysis of the problem moving toward the use by courts of alternatives which will best implement “relevant tort goals ” (in 41 So. Cal. L. Rev. 728, op. cit.). See, also, on the problem generally, Radoff, Perry J., Contribution Among Joint Tortfeasors (44 Texas L. Rev. 326); Rozell, William B., Contribution Among Joint Tortfeasors (52 Cornell L. Q. 407).
The problem of apportionment of responsibility for tort has engaged the attention of several New York State study author! *151 ties. In 1934, for example, the Commission on the Administration of Justice recommended the enactment of a comprehensive statute giving a right of contribution among joint tort-feasors similar to the rights of co-obligors under contracts (N. Y. Legis. Doc., 1934, No. 50 [D]).
One of the first studies made by the New York Law Revision Commission was on this subject (1936 Report, pp. 703-747) followed almost 20 years later by a further study in depth of the problem, and of the direction of decisional law (1952 Report, pp. 21-63).
The earlier study noted the refusal to allow contribution among joint tort-feasors was “ of doubtful validity even in the most extreme case ” (p. 720). The 1952 study observed what seems manifest in the willingness of the court to ameliorate an injustice by the ‘ ‘ passive-active ’ ’ concept, that essentially what had happened is the recognition by the court of a discernible “ difference in the degree of the wrong committed” (p. 54).
Forty years ago Robert A. Leflar, a distinguished student of tort law, addressed himself to the closely related problems of indemnity and contribution as they were then developing (Contribution and Indemnity Between Tortfeasors, 81 U. of Pa. L. Rev. 130).
Although he then accepted the limitations on indemnity observed in contemporary law Leflar argued for a much broader view of apportionment of responsibility among joint tort-feasors by contribution than the law at that time allowed. The reasons outlined apply fully to the question of apportionment between Dow and Urban now before the court. “ This result [contribution] is admittedly inconsistent with the doctrine of contributory negligence and related rules; it causes the law to settle between litigants disputes arising out of their own misconduct. But the reasons given against adjudications of such disputes, at least as between joint tortfeasors, are of doubtful validity, and are completely offset by the social evils which accrue from refusal to adjudicate the disputes. The deciding factor, then, should be fairness as between the parties ” (81 U. of Pa. L. Rev., p. 159, op. cit.). See, also, Report of New York Law Revision Commission (1952, pp. 21-63, op. cit.).
*152 The problem of apportioning liability between third-party plaintiff and third-party defendant in the present case requires consideration of the fact plaintiff represents ■ the estate of the third-party defendant’s employee and so no recovery could be had in an action brought by her against the employer or, indeed, by “ anyone otherwise entitled to recover damages * * * on account of such injury or death ” (Workmen’s Compensation Law, § 11).
But she here asserts no such cause of action and the cause pleaded by Dow against Urban for indemnity is a very different kind of action. The relative responsibility of the employer and the chemical company for the wrongful death of the employee would be determined only in the action by the chemical company in which the cause asserted is based on a separable legal entity of rights to be adjudicated from the action by the administratrix against it (Schubert v. Schubert Wagon Co., 249 N. Y. 253).
The theoretical difficulties have been resolved for this court by Westchester Light. Co. v. Westchester County Small Estates Corp. (278 N. Y. 175, supra) which sustained the right of plaintiff, a utility which had been found negligent in an action for causing the death of defendant’s employee, to sue the employer on indemnity for having directly and negligently caused the death which in turn had compelled plaintiff to pay damages in an action by the employee’s estate.
The difference between the causes of action and the parties pursuing them was decisive. “ Plaintiff does not sue for damages ‘ on account of ’ Haviland’s death. Plaintiff asserts its own right of recovery for breach of an alleged independent duty or obligation owed to it by the defendant ” (opn. by Loughran, J., p. 179).
That is a precise description of Dow’s third-party claim here. Chief Judge Crane, dissenting alone, felt that if the case were sustained, the liability of the employer should be limited “ in amount ” to its exposure under the Workmen’s Compensation Law (p. 185) but this was a view not accepted by the court.
The problem would not arise in such cases as Bush Term. Bldgs. Co. v. Luckenbach S. S. Co. (9 N Y 2d 426, supra), Colon v. Board of Educ. of City of N. Y. (11 N Y 2d 446, supra) or Jackson v. Associated Dry Goods Corp. (13 N Y 2d 112, supra) *153 where employees were not involved, but it would be relevant in such cases as Putvin v. Buffalo Elec. Co. (5 N Y 2d 447, supra) and McFall v. Compagnie Mar. Belge (304 N. Y. 314, supra), where indemnity against employers for injury or death for employees was considered. But in either type of case the issues require separate determinations.
Although, as in Westchester Light. Co. (278 N. Y. 175, supra), an apportionment of responsibility could be pursued in a separate action by the party cast in damages, there should be no major difficulty in keeping apart the separable issues of liability of the defendant to the plaintiff and of the third-party defendant to defendant-third-party plaintiff in the same trial.
Whether the causes are tried together or separately would rest in the court’s discretion, according to the requirements of fairness in the judicial management of the case. One or both actions could, on stipulation of the parties, be tried by the court.
If tried together before a jury, the instruction would be to consider the third-party plaintiff’s cause over only if that party were found negligent; and if that were found, the remedy would depend on the proportion of the blame found against third-party defendant. There might, of course, be a finding leading to no apportionment or to full indemnity.
Where, however, there has been an apportionment of liability based on indemnity between a third-party plaintiff and third-party defendant and the apportionment is not equal, there should not thereafter be a further contribution between them pursuant to CPLB 1401. In authorizing equally shared contribution among tort-feasors jointly found liable, this statute did not contemplate an apportionment already made in the judgment, and the “ joint ’•’ responsibility described was not one of indemnity.
Bight to apportionment of liability or to full indemnity, then, as among parties involved together in causing damage by negligence, should rest on relative responsibility and to be determined on the facts.
The order of .the Appellate Division should be reversed, with costs to abide the event, and the order at Special Term reinstated.
*154 Chief Judge Fuld and Judges Breitel, Jasen and Gibson concur with Judge Bergan ; Judges Burke and Scileppi dissent and vote to affirm.
Order reversed, etc.