William L. Ford, J.
Pursuant to CPLR 8101 and 8301, Western Die Cast Company (Western), one of two third-party defendants, moves for an order granting, awarding and taxing certain costs and disbursements in its favor against the defendant and third-party plaintiff, E. T. Industries, Inc. (Industries), following a voluntary discontinuance on the merits before trial of the third-party action by Industries against Western.
*943 As a result of an automobile accident which occurred on or about June 30, 1973 the plaintiff as administrator commenced an action against Industries wherein the complaint alleged, among other things, that Industries was negligent in the manufacturing of the wheels of the involved automobile and that one of said wheels collapsed before the automobile went off the highway. Industries, in turn, instituted a third-party action against Western and Norris Industries, Inc. (Norris). In its third-party complaint, Industries alleged that prior to June 30, 1973 it purchased from and paid for certain aluminum centers or wheels from Western and that Industries, also prior to June 30, 1973, purchased and paid for certain rims from Norris. Said third-party action sought contribution or indemnity under the theory of Dole v Dow Chem. Co. (30 NY2d 143).
The plaintiff also commenced another action to recover for wrongful death against the owner and the operator of the automobile and in addition, against the owner operator of a second vehicle which allegedly contributed to the accident. We are not concerned with that action.
Pursuant to an order issued at a Special Term of Supreme Court, County of Schenectady, on April 6, 1976, the third-party defendants, Western and Norris, were granted permission to discover and inspect a certain E. T. Mag wheel (wheel). The motion was brought by the third-party defendant Western and as a result of the order, a discovery and inspection of said wheel were held at the offices of the attorney for the plaintiff on April 28,1976 in Ballston Spa, New York.
According to Western’s counsel, Willard Johns (sometimes referred to in the papers as William Jones), Western’s plant superintendent, was required to travel from San Francisco, California, to conduct the discovery and inspection of said wheel on behalf of Western and to then return to San Francisco. Johns’ expenses, including airline fare, hotel, meals, travel time (34 hours at $25 per hour), parking and tolls, totaled $1,288.30. Western also seeks costs in the amount of $95.
By supplemental affidavit of Clayton T. Bardwell, sworn to the 4th day of August, 1976, additional disbursements of $231.11 are claimed for certain photographs taken allegedly of the wheel, and these disbursements are supported by an affidavit of Glen P. Cook, a commercial photographer, sworn to the 15th day of September, 1976, together with an itemized bill from Cook to Western’s attorneys. Thus, costs of $95 plus *944 disbursements of $1,519.41, a total sum of $1,614.41, are sought by Western against Industries.
On June 22, 1976, prior to the impending commencement of an examination before trial of Industries pursuant to an order (on motion by Western) of this court dated June 11, 1976, counsel for Industries stated on the record:
"by mr. keniry: Well simply state that I represent the Defendant, E. T. Industries, Inc.
"I hereby stipulate to discontinue the Third-party action by E. T. Industries, Inc. against Western Die Cast Company, Inc. only.
"by mr. bardwell: That’s on the merits.
"by mr. keniry: On the merits.
"the court: Any objection, Mr. Bardwell?
"by mr. bardwell: No objection, subject to a possible application for costs and disbursements.”
Later the court stated, in connection with the discontinuance:
"You may make an application for reimbursement of some expenses in connection with your client, employees of the client coming to this area from some distance. Is that right, Mr. Bardwell?
"by mr. bardwell: That’s right.
"the court: And that right is reserved to you.”
Western contends that it is unreasonable that it should bear the burden of said expenses after the principal defendant, Industries, has voluntarily discontinued its third-party action after its own investigation revealed that the wheel was not manufactured by Western and contends further that the dilatory tactics of Industries have created unnecessary and unreasonable hardships on Western and have forced Western to expend large amounts of time and money when a proper investigation would have revealed that Western was not the manufacturer of the wheel component sued upon herein.
The position of Industries is that the expenses of a party to an action in connection with investigation and preparation for trial are not a taxable disbursement. Industries also took the position at the time the motion was argued that the only facts alleged in support of the motion were those contained in the July 22, 1976 affidavit of Bardwell and that such facts being those of an attorney and not of any officers, agents or em *945 ployees of Western were hearsay. Western’s counsel requested and was granted an opportunity to file further affidavits with the court, and these affidavits were received and have been considered on this motion.
Industries’ counsel points to the following colloquy, as appearing at page 16 of the minutes of the examination before trial on June 22, 1976 of Dale E. Thorne, General Manager of Industries: "Q. Now, there had been an allegation at one time that the spider of which this mag wheel was composed, was manufactured by Western Die Cast Company. I think we stipulated now, with the Judge, that was not the case, is that true? A. That’s true. Q. And I take it that at some time there was an impression that Western Die Cast Company did produce the spider that was used in this wheel, is that right? A. That’s right.”
Industries’ counsel does not state who posed the questions to Mr. Thorne and, in any event, these questions and answers were asked after Industries’ counsel had discontinued the third-party action against Western. Counsel for Industries presented two affidavits, one sworn to the 3d day of August, 1976 and the second sworn to the 9th day of August, 1976. In the first affidavit Industries’ counsel denies that Industries engaged in any dilatory tactics in connection with the defense of the action and the prosecution of the third-party action herein.
In the second affidavit, Industries’ counsel states that on April 28, 1976 he presented to James S. Carter, an attorney in the law firm representing Western, 11 typewritten pages of a report of Walter R. Nass, President of Nassco Engineering Laboratories, Inc., which examined the wheel for Industries as well as the automobile and the scene of the accident, together with three pages of diagrams, 20 photographs in color of the destroyed wheel, a second wheel taken from the damaged automobile and of the said automobile and four photographs in color of the scene of the accident herein, without cost.
The stipulation by Industries to discontinue on the merits the third-party action which it had commenced against Western entitles Western to costs in the amount of $95 as set forth in its proposed bill of costs.
The disbursements which it seeks to recover for the expenses of Western’s plant manager, Johns, and the photographs taken by Cook do not fall within any of the first 11 paragraphs of subdivision (a) of CPLR 8301. If allowable, such *946 disbursements must come within the purview of CPLR 8301 (subd [a], par 12) which provides: "such other reasonable and necessary expenses as are taxable according to the course and practice of the court, by express provision of law or by order of the court.”
In Deere Co. v Cerone Equip. Co. (33 AD2d 257, 258), cited by Western, the court stated: "The question of the allowance of unenumerated items is thus directed to the courts and must depend on the particular circumstances involved as to each item alleged to be taxable. And the courts in deciding on 'course and practice’ are not bound by prior rejection of items as taxable disbursements because of a lack of statutory basis for taxation (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 8301.24). Nor, of course, is it required that a standard usage be established as opposed to one that is premised on discretion.”
While the language quoted from Deere (supra) indicates a liberal approach to the allowance of disbursements, the language must be read in the context of the case. The court found that Deere had an unquestionable right to the possession of certain items of equipment and also found that Cerone prevented peaceful repossession and rejected an opportunity to satisfy his obligation by paying over the amount due, thereby forestalling any repossession. Deere, which was granted summary judgment, there being no defense that could be denominated in the slightest as meritorious, was required under CPLR 7102 to provide an undertaking to regain possession and the court said that the premium was a reasonable expense necessary to preserve Deere’s unquestioned security rights in the equipment. The instant case does not come to us in the same or sufficiently similar posture as Deere.
The court notes that it was only after Johns, Western’s plant superintendent, had inspected the wheel at Ballston Spa, New York, that Western was in a position to show facts that indicated the wheel was not manufactured by Western. In Johns’ letter dated April 29, 1976 to Western’s counsel, after citing seven reasons why the wheel was not manufactured by Western, he states: "I hope that from the above facts you will be able to absolve Western Die Casting Company of any liability in the pending suit, and that Western’s participation will no longer be required.” Presumably, Johns was able to establish these reasons to his own satisfaction only after examining the wheel, which was in the possession of plaintiffs *947 counsel at Ballston Spa. Johns’ findings, made after discovery and inspection of the wheel, were as unknown to Industries as to Western prior to said inspection. It can hardly be said, therefore, that Industries’ action against Western was obviously ill-founded or commenced in bad faith.
In the court’s opinion, neither Van Patten v Sylvia (76 Misc 2d 899), which is cited by Industries, nor Mechanicville Urban Renewal Agency v Bruno (85 Misc 2d 159), cited by Western, are in point. In both cases the expenses of an expert witness were sought to be recovered as a taxable disbursement. In Van Patten, the court held such an expense to be nontaxable, and in Mechanicville Urban Renewal Agency the court, while holding to the contrary, distinguished Van Patten on two grounds, only one of which we need allude to. The court in Mechanicville Urban Renewal Agency relied upon a constitutional ground and quoted from Matter of City of New York (Town of Hempstead) (125 App Div 219, 222) reading in part as follows: "and the spirit of the Constitution clearly requires that he shall not be thus compelled to part with what belongs to him without the payment, not alone of the abstract value of the property, but of all the necessary expenses incurred in fixing that value.” Thus it is in condemnation awards.
The two cases are distinguishable from the case at bar because Western’s witness, while he may have been an expert, was Western’s plant superintendent and thus in reality a party. Corporations may only function through natural persons.
While it might be said that, because Western was the moving party in both the discovery motion (examination of the wheel) and the examination before trial of Industries, any disbursements incurred by Western would be at its own expense, the court does not wish to bottom its disallowance of Western’s motion on so narrow a ground. Defendants may pursue legal procedures to which they are entitled.
There is no charge by Western that Industries was reckless or careless or negligent in bringing its third-party action against Western. Nor is there any charge of harassment by Western. At most, Western charges that Industries was guilty of dilatory tactics but cites no facts to buttress that charge.
The court is of the opinion, and so finds, that Western must bear its own disbursements incurred in order to obtain its release from this lawsuit as a reasonable and necessary cost incurred in doing business. One cannot prevent another from *948 suing him. Where malice or abuse of process or recklessness or negligence can be shown in the institution of the action, the court may and should exercise its discretion in allowing items as taxable disbursements which it otherwise might not allow. That is not the case here. It has been said that because the Legislature has not seen fit to allow attorney’s fees to a successful party, the court should be liberal in construing what constitutes a taxable disbursement (8 Weinstein-KornMiller, NY Civ Prac, par 8301.01, pp 83-6, 83-7). The court cannot agree. Such action would be a form of legislating by the court — a circumvention of CPLR 8301 by the allowance of a portion of an attorney’s fee in the guise of a disbursement.
We are unable to discern that "the course and practice of the court” or "express provision of law” permit the allowance of disbursements of a party to the action such as are sought herein.
Western’s motion to the extent that it seeks costs is granted in the amount of $95, without costs of this motion, and that portion of its motion which seeks to tax as disbursements the sum of $1,519.41 is denied.