**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Plaintiff,**

v.

**AETNA INSURANCE COMPANY and Mutual Fire, Marine & Inland Insurance Company, Defendants.**

No. 84 C 1140.

United States District Court, E.D. New York.

Feb. 8, 1985.

Ernest J. Williams, New York City (Geraldine O'Donnell, New York City, of counsel), for plaintiff.

Barry, McTiernan & Moore, New York City (Roger P. McTiernan, Kathryn Deborah Nealon, New York City, of counsel), for defendant Aetna Insurance Company.

Wilson, Elser, Edelman & Dicker, New York City (Michael D. Glatt, Eileen B. Eglin, Ralph A. Rosella, Jr., New York City, of counsel), for defendant Mutual Fire, Marine & Inland Insurance Company.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff Consolidated Edison Company of New York, Inc. (Consolidated Edison) brought this action against two insurance companies, Aetna Insurance Company (Aetna) and Mutual Fire, Marine & Inland Insurance Company (Mutual), seeking a declaration that the insurance companies afford coverage for any loss sustained as a result of any judgment in a case in this court entitled *Cappellini v. McCabe Powers Body Company* in which Consolidated Edison was joined as a third-party defendant. The parties move for summary judgment declaring their rights and obligations.

I

Thomas Cappellini was injured on May 11, 1973 while using a lift manufactured by McCabe Powers Body Company (McCabe) while he was working as an employee of Consolidated Edison. He and his wife brought the action against McCabe which impleaded Consolidated Edison. The jury rendered a verdict of $1,745,870.68 in favor of the Cappellinis and attributed 85% of the fault to Consolidated Edison and 15% to McCabe. The Court of Appeals upheld the amount of the award but ordered a new trial as to the apportionment of liability between Consolidated Edison and McCabe. 713 F.2d 1 (2d Cir.1983). The matter is now pending in this court.

II

At the time of Cappellini's accident Consolidated Edison had four policies in effect, two issued by Mutual and two by Aetna. One Aetna policy (Aetna Workmen's Compensation policy) called "Workmen's Compensation and Employers' Liability" provides in pertinent part that Aetna will indemnify Consolidated Edison against loss sustained by it on account of (a) compensation and other benefits required of Consolidated Edison by the Workmen's Compensation Law, and (b) sums which Consolidated Edison becomes legally obligated to pay as damages because of bodily injury caused by accident sustained by a Consolidated Edison employee in the course of his employment, including damages for which Consolidated Edison is liable over by reason of suits by others "to recover dam-

ages" obtained from them "because of" the bodily injury to a Consolidated Edison employee. Under this policy Consolidated Edison's "retention" is $150,000 per accident and the "limit of indemnity" of Aetna is $1,250,000 per accident.

This Aetna Workmen's Compensation policy also contains a provision the effect of which is the chief dispute among the parties. It is Condition 10 and reads as follows:

> If the insured carries other valid and collectible insurance, reinsurance or indemnity with any other insurer or reinsurer covering a loss also covered by this contract (other than insurance or reinsurance that is purchased to apply in excess of the sum of the retained limit and the limit of liability hereunder), the insurance afforded by this contract shall apply in excess of and shall not contribute with such other insurance or reinsurance.

One Mutual policy (Mutual Umbrella policy), characterized as "Umbrella Liability Insurance," provides indemnity for all sums which Consolidated Edison shall be obligated to pay by reason of liability imposed by law for damages, as defined by the term "ultimate net loss", on account of personal injuries. The term "ultimate net loss" is defined in pertinent part to mean "the total sum which the Insured [Consolidated Edison], or any company as his insurer, becomes obligated to pay by reason of personal injury ... damage claims." Mutual's limit of liability is stated as only for the "ultimate net loss" in excess of $500,-000 and then only up to $500,000 per occurrence.

The second Aetna policy (Aetna Excess policy) and the second Mutual policy (Mutual Excess policy) are both in "excess" of the Mutual Umbrella policy and provide for limits of liability of $650,000 for Aetna and $350,000 for Mutual per occurrence part of $1,000,000 per occurrence in excess of the $1,000,000 referred to in the Mutual Umbrella policy.

### III

■ Mutual contends that it has no liability under its Umbrella policy for any amounts payable in the *Cappellini* case by reason of Exclusion (c) of that policy, which provides that it shall not apply

> except with respect to liability assumed under contract covered by this policy, to any obligation for which the Insured may be held liable under any Workmen's Compensation Law.

Mutual says that this language shows an intention to exclude liability incurred where an employer is held liable for damages stemming from injuries to its employees unless such liability arises out of a contract obligation covered by the policy. Mutual deduces this intention from the fact that the policy was negotiated and executed before the decision in *Dole v. Dow Chemical Company*, 30 N.Y.2d 143, 282 N.E.2d 288, 331 N.Y.S.2d 382 (1972), recognized the right of a third party such as McCabe to obtain contribution from an employer such as Consolidated Edison for damages traceable to injuries to an employee.

The argument is hardly persuasive. Under the policy Mutual agrees to indemnify Consolidated Edison for all sums it "shall be obligated to pay by reason of the liability ... imposed ... by law" for damages "on account of personal injuries." The *Dole* case did not recognize a liability "under" the Workmen's Compensation Law. Certainly that law did not "impose" the liability. Indeed, the opinion notes that actions for indemnity are "very different" from actions that are controlled by the Workmen's Compensation Law. 30 N.Y.2d at 152, 282 N.E.2d at 294, 331 N.Y.S.2d at 390.

Surely if Mutual had wished to exclude any claims for indemnity or contribution arising out of an injury to an employee Mutual could have found appropriate language to that end. Even broadly read the words do not create an ambiguity, but if they did the New York decisions would resolve it against the insurance company which drafted the policy. *Insurance Co. v. Dayton Tool & Die Works, Inc.*, 57 N.Y.2d 489, 499, 443 N.E.2d 457, 461–62, 457 N.Y. S.2d 209, 213–14 (1982).

The court concludes that Exclusion (c) of the Mutual Umbrella policy is not applicable.

## IV

Aetna argues that Condition 10 quoted above of the Workmen's Compensation policy making it "in excess" of "other insurance" requires that Consolidated Edison's $500,000 retention and the Mutual Umbrella policy for $500,000 and both the Aetna and Mutual Excess policies be exhausted before the Aetna Workmen's Compensation policy comes into effect. Aetna reasons that Mutual's Umbrella policy provides for such "other insurance" and that the "self-insured" retention of $500,000 by Consolidated Edison constitutes part of that "other insurance" as do the two Excess policies.

Mutual and Consolidated Edison contend that Aetna's Workmen's Compensation policy is applicable prior to the Mutual Umbrella policy. Their argument is that Consolidated Edison obtained the Aetna Workmen's Compensation policy specifically to cover payment for those incidents causing injury to employees and obtained the Mutual Umbrella policy to apply to personal injuries not covered by more specific policies, and that the court should give effect to the "intent of the parties," which was to apply the specific policy first.

Consolidated Edison also argues that in the event that the court applies Condition 10 of Aetna's Workmen's Compensation policy to require that Mutual's Umbrella policy coverage be applied first, Consolidated Edison's $500,000 retention should not be deemed "other insurance" within the meaning of that condition.

■ The argument by Mutual and Consolidated Edison that the court should not give effect to Condition 10 presupposes that the asserted specificity of Aetna's Workmen's Compensation policy bespeaks an intention by the parties to apply that policy first. It does, of course, apply to a narrower class of personal injuries, namely, those occurring to employees, than does Mutual's Umbrella policy, covering any personal injuries. In the absence of language purporting to establish priorities among several policies, or where several policies purport to provide only excess coverage, it would perhaps be fair to infer that the more specific one should be exhausted first. *See, e.g., Allstate Ins. Co. v. Employers Liability Assurance Corp.,* 445 F.2d 1278 (5th Cir.1971); *Berkeley v. Fireman's Fund Ins. Co.,* 407 F.Supp. 960 (W.D.Wash.1975). But to draw that inference in the face of language reciting that the more specific policy is "in excess" of "other insurance" for losses also covered by the policy would be to recast that language to say "other equally specific insurance."

■ This court has found no New York decisions that would justify it in taking such liberties with the wording. Indeed, it seems wise, where there is a dispute as to priority between more than one insurance carrier, to give the natural meaning to all the language used in the policies so far as it is possible to do so. The provision of multiple layers of insurance is a complex subject contemplating close attention to the precise wording of documents. The parties who engaged in the negotiations for policies in this case were not unsophisticated. They were aware of the terms of all four of the policies at issue. Presumably they had access to competent counsel qualified to give the matter the attention it deserved.

The court therefore concludes that Condition 10 of Aetna's Workmen's Compensation policy should be read as requiring that the coverage by Mutual under its Umbrella policy be exhausted first.

■ However, the court sees no merit in Aetna's contention that Consolidated Edison's retention of $500,000 under the Mutual Umbrella policy is "other insurance" within the meaning of Condition 10 of the Aetna Workmen's Compensation policy. The language of that paragraph provides that the insurance afforded by the policy shall be excess to "other valid and collectible insurance, reinsurance or indemnity" carried by the "insured" with "any other

insurer or reinsurer" covering the same loss. Consolidated Edison is plainly not both the "insured" and the "insurer", and certainly is not an "indemnitor" of itself. The "other insurer or reinsurer" can only refer to some entity other than the "insured."

The policy thus requires Aetna to indemnify Consolidated Edison for the first $500,000 damages (less the $150,000 retention) for which Consolidated Edison is liable by reason of the suit or claim of McCabe "to recover damages" obtained by the Cappellinis "because of" the "bodily injury" to Cappellini.

## V

The Mutual Excess policy and the Aetna Excess policy are both "excess" to Mutual's Umbrella policy but not to Aetna's Workmen's Compensation policy. Thus, Condition 10 of that policy, since it requires first the exhaustion of Mutual's Umbrella policy, has the same effect with respect to both Excess policies.

In short, the payment priorities will be as follows: first $150,000 by Consolidated Edison, second $350,000 by Aetna under its Workmen's Compensation policy, third $500,000 by Mutual under its Umbrella policy, fourth $1,000,000 to be shared 65% by Aetna and 35% by Mutual under their Excess policies, and fifth the remaining amounts, if any there be, by Aetna under its Workmen's Compensation policy not to exceed $750,000.

## VI

The foregoing assumes that Consolidated Edison is entitled to the coverage under all the policies concerned. Mutual contends that Consolidated Edison should be denied coverage under the Mutual policies for its failure to cooperate adequately with Mutual and for its bad faith in failing to settle the *Cappellini* case within the $500,000 retention by Consolidated Edison specified in the Mutual Umbrella policy.

 The court determines that Consolidated Edison did not act in bad faith by failing to settle. Nothing in the Mutual Umbrella policy required Consolidated Edison to pay the first $500,000 from its own pocket before reimbursement of the next $500,000 was required under that policy. The language defining "ultimate net loss" is quite to the contrary. As the court has indicated, Consolidated Edison will be required to pay only the first $150,000 of the initial $500,000. No one would have supposed the case could have been settled for $150,000.

The contention that Consolidated Edison did not cooperate cannot be resolved on these papers. Mutual makes allegations that Consolidated Edison denied Mutual access to its files. Perhaps Mutual can make a sufficient showing at a hearing to meet the heavy burden placed on an insurer to show the willful and avowed obstruction required by the New York decisions. *See, e.g., Thrasher v. United States Liability Ins. Co.*, 19 N.Y.2d 159, 168–69, 225 N.E.2d 503, 508, 278 N.Y.S.2d 793, 800 (1967) and cases cited. Based on the facts stated in the affidavits the court is skeptical as to whether Mutual can meet that burden but cannot say, based on the decisions of the Court of Appeals for the Second Circuit, that Mutual should not have an opportunity to try.

## VII

Summary judgment is denied on the issue of whether Consolidated Edison failed to cooperate to the degree that it should be denied coverage under the Mutual policies. The rights of the parties, on the assumption that Consolidated Edison is entitled to coverage under all the policies concerned, are declared as set forth above.

So ordered.