■ Spiridou Meis et al., Respondents, v ELO Organization, L. L. C., et al., Defendants. (And a Third-Party Action.) P.S. Systems Ltd., Second Third-Party Plaintiff-Respondent, v Spartan Plumbing & Heating, Inc., Second Third-Party Defendant-Appellant. Uezo Corporation, Third Third-Party Plaintiff-Respondent, v Spartan Plumbing & Heating, Inc., Third Third-Party Defendant-Appellant. [723 NYS2d 170] —Order, Supreme Court, New York County (Louise Gruner Gans, J.), entered March 10, 2000, which denied Spartan Plumbing and Heating's motion for summary judgment dismissing the

second third-party complaint by P.S. Systems Ltd. and the third third-party complaint by Uezo Corporation, affirmed, without costs.

Plaintiff, no. longer able to pursue his trade as a plumber, suffered the complete amputation of the thumb of his dominant hand when an unsecured pipe fell on him. According to his bill of particulars, he also suffered "significant deficits in functional capabilities of the right upper extremity"; phantom pain in the amputated area; weakness, numbness, and tingling in the fingertips, "residual diffuse swelling in the fingers and some slight restriction of motion of approximately 5 degrees at all PIP and MIP joints of the second through the fourth digits"; "acute sensitivity at the end of the thumb metacarpal area to touch"; "injuries to the nerves, muscles, blood vessels, tendons, ligaments and other soft tissues in and around the affected areas"; and "permanent loss of use and function of the affected areas as well as chronic and continual pain restriction and limitation of motion and muscle spasm."

Plaintiff's bill of particulars also asserted that his injuries will result in premature osteoarthritic changes; that he is unable to engage in "those usual and customary daily recreational activities that [he] pursued prior to the occurrence"; that he has been confined to bed and home continuously and intermittently; and has been incapacitated from his job from the date of the accident to the present.

Whether plaintiff suffered a "grave injury" pursuant to Workers' Compensation Law § 11 cannot be conclusively determined on the extant record. The section itemizes "grave injuries" to include, "death, *permanent and total loss of use* or amputation *of* an arm, leg, *hand* or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability" (Workers' Compensation Law § 11 [emphasis supplied]).

The statute does not require the total loss of a hand; it requires instead the loss of the hand's use. This 31-year-old plaintiff* was formerly a plumber. Because of the impairment of his dominant hand, he is without the ability to grasp and manipulate and can no longer use his training and experience to practice his trade. Further, according to his bill of particu-

---

* Plaintiff was born on November 10, 1965. The accident occurred on June 5, 1996.

lars, he has also lost the ability to engage in routine daily and recreational activities. Moreover, because of the development of osteoarthritis, plaintiff's condition will worsen over time. In the circumstances presented, a jury should be allowed to examine the degree of plaintiff's impairment to determine if it is sufficiently "grave" to allow third-party recovery against his employer.

Courts have consistently favored liberal construction of the provisions of the Workers' Compensation Law to accomplish "the economic and humanitarian objects of the act" (*Matter of Smith v Tompkins County Courthouse,* 60 NY2d 939, 941). The general intent of the statute is to provide injured employees compensation and medical expenses for job-related accidents regardless of fault (Minkowitz, Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 1, at 3-4). Although the legislative goal of the 1996 Amendments to Workers' Compensation Law § 11 was to restrict third-party suits to cases involving a uniform subset of the most severely injured employees, the amendment has not changed the overall remedial nature of the statute.

This case is distinguishable from those cases cited by the dissent. In those cases, each court held that the particular facts did not support a finding that the plaintiff had suffered a "grave injury," and the third-party suits were dismissed as a matter of law (*see, Hussein v Pacific Handy Cutter,* 272 AD2d 223 [injury causing corrected visual acuity of 20/40 in one eye not considered grave]; *Castro v United Container Mach. Group,* 273 AD2d 337, *lv granted* 96 NY2d 701 [amputation of the tips of fingers on one hand not considered grave]; *Ibarra v Equipment Control,* 268 AD2d 13 [loss of vision in one eye not considered grave injury]; *Hilbert v Sahlen Packing Co.,* 267 AD2d 939, *lv dismissed* 95 NY2d 790 [internal injuries, fractures, and non-total loss of hearing and vision not considered grave]).

The dissent strongly relies upon our holding in *Barbieri v Mount Sinai Hosp.* (264 AD2d 1). That case is similarly distinguishable. Discovery had been completed in *Barbieri,* and plaintiff premised his allegation of "grave injury" on two specific listed injuries: "severe facial disfigurement" and "acquired injury to the brain * * * resulting in permanent total disability" (*Barbieri, supra* at 5). As to the facial injuries, we found that plaintiff's allegations of scarring did not constitute "facial disfigurement" as listed in section 11 (*Barbieri, supra* at 6). As to the injuries to the brain, after considering the complaint, as amplified by the bill of particulars and an

MRI report and a neuropsychological evaluation submitted in support of the complaint, we concluded as follows: "The medical evidence indicates periods of disorientation and some dementia, particularly in short-term memory, although plaintiff's long-term memory seems intact. Notably, the evaluation indicated that plaintiff is 'physically independent and ambulatory' and during his evaluation seemed cognitively logical and goal oriented, albeit with some apparent slowness of speech and some distractability. *However, his cognitive abilities did not seem especially inconsistent with his academic history*, although he underperformed on some neurological tests, presumably as a consequence of trauma to the head. Nevertheless, this does not, on its face, make out permanent and total disability. Moreover, other *indications in that evaluation undermine rather than underscore the permanence and totality of the injuries.*" (*Barbieri, supra* at 7 [emphasis supplied].)

The dissent acknowledges that if plaintiff's allegations as to his injury are accurate and can be proven, they are "serious," and it states that "the totality of the loss of a body part may have a factual dimension in an appropriate case." However, the dissent concludes that the injuries here cannot be considered "grave" as a matter of law, because plaintiff did not allege the permanent and total loss of use of his hand. This is an overly formalistic reading of the pleadings and an overly narrow construction of the law.

Medical, anthropological, and legal authorities agree that a thumb plays a more fundamental role in human activities than the index finger. However, loss of the index finger, but not the thumb, is considered a "grave injury" under the statute. In fact, the American Medical Association, in the fourth edition of its *Guides to the Evaluation of Permanent Impairment*, illustrates that loss of the thumb constitutes 40% impairment of hand, whereas loss of the index finger constitutes only a 20% impairment (*id.* at 3/19). An excerpt from the Encyclopedia Americana also supports the conclusion that the thumb is an integral component of the hand. It states, "one of the more interesting and useful anatomical features of man and other primates is the opposable thumb, which allows objects to be grasped and picked up. Except for primates, no other animals have this ability" (13 Encyclopedia Americana at 759 [1999]). Legal scholars have also noted the importance of the thumb as the hand's most important finger (*see,* David D. Siegel, Outside Counsel, *A Flood of 1996 Procedure Bills: The Workers' Compensation (Dole/Dow) Bill,* NYLJ, Oct. 7, 1996, at 1, col 1, at 6, col 3).

Where a court is faced with a plaintiff whose injury is serious enough to be considered one of the contemplated "grave" injuries under the statute, the third-party suits should be allowed to proceed notwithstanding that the injury did not take one of the more specific forms listed in the statute (Judith S. Kaye, *State Courts at the Dawn of a New Century: Common Law Courts Reading Statutes and Constitutions*, 70 NYU L Rev 1, 24 [1995]). Concur—Mazzarelli, Andrias, Ellerin and Lerner, JJ.

Tom, J. P., dissents in a Memorandum as follows: In consideration of the Legislature's clear intent in amending section 11 of the Workers' Compensation Law to legislatively overrule *Dole v Dow Chem. Co.* (30 NY2d 143) except in a narrowly defined, and necessarily narrowly construed, set of circumstances, I respectfully dissent and would reverse to dismiss the subject third-party actions.

The basic facts are straightforward, relatively undisputed and require little elaboration. Plaintiff was employed by third-party defendant-appellant Spartan Plumbing & Heating, Inc. during June 1996, when he was allegedly injured while working at a Manhattan job site. Plaintiff sued the ELO defendants as owners and Uezo Corporation as lessee, of the premises, and P.S. Systems as the general contractor. The action against ELO Realty was discontinued by stipulation, insofar as it lacked any ownership interest in the premises. P.S. Systems, and Uezo, each commenced its third-party action against Spartan for contribution and indemnification.

Spartan, the employer, moved to dismiss the third-party complaints of Uezo and P.S. Systems on the ground that plaintiff did not sustain a "grave injury" pursuant to section 11 of the Workers' Compensation Law and, therefore, these third-party actions for indemnity and contribution cannot be maintained. The present appeal concerns only the third-party actions.

Plaintiff alleges that his thumb was amputated when hit by an unsecured pipe that fell from above him, which forms the factual predicate for his Labor Law §§ 200, 240 and 241 claims. He itemizes various injuries that resulted from the amputation of his thumb, including psychological injuries, the need for surgery and wearing a thumb prosthesis, continuing pain and tingling in other fingertips, deficient functional capabilities in that hand, the development of osteoarthritis, and difficulties grasping objects. Insofar as is relevant to this appeal, plaintiff, in his verified bill of particulars, also alleges "permanent loss of use and function of the affected areas as well as chronic and

continual pain restriction and limitation of motion and muscle spasm."

If plaintiff's allegations are provable and accurate, I would not dispute that they are serious. The critical question, though, is whether they are "grave," as that term is defined in the 1996 amendments to section 11 of the Workers' Compensation Law. These allegations do not reach that threshold set by the Legislature for maintaining third-party claims against employers of injured parties and, as such, we are constrained to dismiss the third-party actions. In so doing, we would be acting consistently with our recent ruling in *Barbieri v Mount Sinai Hosp.* (264 AD2d 1) which, recognizing the legislative mandate of section 11, strictly construed its terms of exclusion.

Workers' Compensation Law § 11 directs that: "An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a 'grave injury'." The statute then itemizes in exclusive terms how to employ the key term grave injury as follows: [A] 'grave injury' * * * shall mean *only one or more* of the following: death, *permanent and total* loss of use or amputation of an arm, leg, hand or foot, loss of *multiple fingers*, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an *index finger* or an acquired injury to the brain caused by an external physical force resulting in permanent total disability" (italics added).

Although the list is extensive and at first glance one may conclude that many of the items are not germane to the present case, their inclusion in this discussion serves as more than mere excess verbiage. Rather, it demonstrates the precision—and exclusivity—with which the Legislature treated the term grave injury, undermining any judicial attempt to interpret it expansively to maintain the viability of the very third-party actions the Legislature wanted to eliminate. This list of injuries constituting grave injuries has been characterized as "exhaustive, not illustrative" (*Ibarra v Equipment Control*, 268 AD2d 13, 18 [citation omitted]).

The majority, impliedly finding that the Legislature did not include all "grave" injuries when it drafted section 11, urges that courts may thus expand the term. But by thus ignoring the clear language of section 11 and expanding the statutory

designated list, the majority turns an exclusive legislative delineation into an illustrative and merely descriptive listing. We lack power to do this.

Hence, the fact that the Legislature allowed for recovery of certain specified injuries in actions against employers does not allow us to basically jettison this clear legislative mandate by re-expanding the scope of recoverable injuries into the very domain the Legislature wanted to seal off. Although the majority questions why an index finger, but not a thumb, is delineated, the fact remains that the distinction lay well within the realm of legislative prerogative, leaving no room under these circumstances for judicial fiat.

Standard canons of statutory construction require that "a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" *(Patrolmen's Benevolent Assn. v City of New York*, 41 NY2d 205, 208), a doctrine of which we should be especially mindful when legislative intent is as clearly articulated as it is for section 11. As the Court of Appeals recently emphasized in analyzing a section 11 action, "the clearest indicator of legislative intent is the statutory text, [hence] the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" *(Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583; *accord Castro v United Container Mach. Group*, 273 AD2d 337, *lv granted* 96 NY2d 701). The Court of Appeals noted in *Majewski (supra*, at 584) and we noted in *Barbieri (supra)*, the point of this 1996 legislation was to repeal *Dole* except in cases of grave injuries, as defined therein (*see*, L 1996, ch 635, § 1). By providing such an exclusive remedy in the context of third-party actions, the 1996 amendments to section 11 were explicitly enacted to "protect employers and their employees from other than contract-based suits for contribution or indemnity by third parties * * * in effect, repealing the doctrine of *Dole*" (Assembly Mem in Support of L 1996, ch 635, 1996 McKinney's Session Laws of NY, at 2562). Thus, the liberality with which the Workers' Compensation Law is often interpreted to achieve legislative goals, a device upon which the IAS court relied but which we rejected for section 11 in *Barbieri*, is beside the point when the Legislature makes clear that strict application is required.

It is clear that the omission of an amputated finger, be it a thumb or another digit, was not a legislative oversight. The Legislature did include an amputated index finger, or amputation of multiple fingers, on the list of injuries constituting grave injuries. The irrefutable inference is that if the Legislature had

intended to expand the list of injuries to the loss of another digit, it would have done so explicitly (see, *Castro, supra*, at 338 [tips, but not entirely, of plaintiff's fingers amputated; not "loss of multiple fingers"]). Therefore, the amputation of the thumb, as such, cannot be used to sustain these third-party actions.

Necessarily, then, the majority must rely in this case on the exclusion for permanent and *total* loss of the hand or the permanent and *total* loss of its use, a result for which the IAS court also reached, insofar as the amputation of a thumb is not one of the itemized injuries giving rise to a grave injury. Turning to the diminished use of the plaintiff's hand, though, here, too, the statute clearly precludes relief. The IAS court found diminished use to constitute a grave injury under section 11, but that reading is untenable. The operative statutory term in this regard is that the loss of use must be both "permanent and total." As we have noted elsewhere, diminishment is not sufficient when permanence and totality are required (see, *Hussein v Pacific Handy Cutter*, 272 AD2d 223; *accord Hilbert v Sahlen Packing Co.*, 267 AD2d 939, *appeal dismissed* 95 NY2d 790). The IAS court relied on *Matter of Pedro v Liberty Lines Express* (246 AD2d 945) to find that the loss of a thumb diminishes the use of the hand which can then manifest a grave injury. But that case addressed an employer's challenge to a Workers' Compensation Board finding that the employee could recover benefits for a 50% diminishment of the hand's use resulting from the amputation of the thumb. *Pedro* simply has no relevance to a section 11 analysis.

The majority alludes to plaintiff's possible total loss of use of the hand because he no longer can pursue his trade but that, too, is not the standard. The fact that plaintiff can no longer practice his trade as a plumber due to the loss of a thumb does not constitute the total loss of his use of the hand as urged by the majority. If loss of the hand's use for a particular trade or other purposes had been intended to allow for recovery, the Legislature, again, had ample opportunity to so provide.

In the present case, in order that the third-party plaintiffs recover against Spartan, the employer, plaintiff had to have proved, by competent medical evidence, the permanent and *total* loss of his hand. Contrary to the majority's analysis, plaintiff did not even plead permanent and *total* loss of the use of his hand. Apparently, plaintiff himself felt that portion of section 11 providing for "total loss of use" of his hand has no application to the facts of this case. At most, he pleaded, in less than precise terms, the permanent "loss and function of the af-

fected areas," which is insufficient. However, even if we seize on the alleged permanency of the loss of use and construe its application to the hand that lost the thumb, this, still, would contravene the legislative intent that all conditions of section 11 be effectuated before recovery in the third-party action may be had. Mere alleged permanency, not coupled with the alleged totality of the loss, is an insufficient basis upon which to find the existence of a grave injury (*Barbieri, supra*; *Hussein, supra*; *Castro, supra*; *Ibarra, supra*). In this regard, too, *Pedro*, upon which the IAS court relied, is irrelevant: by its terms, the loss in *Pedro* was partial rather than total.

Although plaintiff urges that the degree of loss remains a factual issue, no authority is cited for this proposition. Nor, in this regard, does plaintiff even attempt to distinguish the developing body of governing authority noted above that has treated insufficiently pleaded and proved claims of total loss as issues of law. Nor can the totality of the loss of the hand be reasonably inferred from plaintiff's allegations, as expanded in the verified bill of particulars noted above. Rather, the use of a thumb prosthesis and his regular physical therapy for the hand militate against the totality of the loss. Even plaintiff's descriptive terms indicating *restriction and limitation* of motion as indicia of the loss of use of his hand undermine, rather than support, the totality of the loss of use as it applies to his hand. While I would not gainsay that the totality of the loss of a body part may have a factual dimension in an appropriate case, this is not the case.

To reach the result presently advanced by the majority one necessarily must contravene the unmistakable statutory phrasing, ignore the well-established compendium of legislative history, and overrule our own developing body of case law specifically addressed to section 11. With all due respect to the majority, I fail to see how this can be done within the parameters of logical, legal consistency.

Finally, the 1996 amendments to section 11 leave contractual rights as between the employer and premises owner unimpeded, a point noted by Judge Smith in his opinion in *Majewski*, made explicit in the previously cited legislative memoranda, and generally conceded by Spartan. Insofar as Uezo proceeded against Spartan solely on common law grounds, though, it retains no viable third-party claim. Spartan, in its brief, states that P.S. Systems did plead contractual indemnification against Spartan, but a fair review of its third-party complaint indicates no more than the assertion of common law contribution and indemnification theories. In any event, the

only agreement included in the record binding P.S. Systems and Spartan is a bare estimate of costs for broadly scoped-out work that is devoid of any language triggering contractual third-party rights.

Accordingly, I would reverse and dismiss both third-party actions.