OPINION OF THE COURT
John Copertino, J.
This medical malpractice action was brought in 1977 by the plaintiffs against anesthesiologist Domenico Ambrosio and surgeon Alfred C. Liefrig, who attended to the infant plaintiff at the Smithtown General Hospital (Hospital). The Hospital, the anesthesiologist’s partners and the members of the surgeon’s professional corporation were also named as defendants in this action.
As the action wended upon its course, a settlement agreement was made on April 18, 1980, and on May 23, 1980, an order was signed approving this agreement and empowering the guardian plaintiff to compromise the main action against all the named defendants save the Hospital; the action against it was severed and continued.
On November 15, 1980, an order was entered granting leave to amend plaintiffs’ bill of particulars "so as to withdraw all claims against * * * [the] Hospital, other than the derivative claim based upon the acts of negligence and malpractice allegedly committed by Dr. * * * Ambrosio”.
In 1981 a third-party action was commenced by the Hospital against the surgeons and their professional corporation demanding indemnification from the surgeons. The surgeons’ *278 answer consisted of a general denial and an affirmative defense to the effect that the third-party complaint failed to state a cause of action, as well as an affirmative defense maintaining that the third-party complaint was barred by General Obligations Law § 15-108.
In July 1987, the Hospital instituted a second third-party action against Dr. Ambrosio’s partners, alleging in its complaint that the injuries suffered by the infant plaintiff were caused "wholly and entirely * * * [by] the active and primary negligence of defendant Ambrosio” and that the Hospital was entitled to indemnification from the partners "by virtue of their vicarious liability for the actions of their partner * * * Ambrosio.” The second third-party defendants’ answer denied any wrongdoing on the part of any of the physicians named in the action and set forth 12 affirmative defenses as follows:
"as and for a first affirmative defense
"8. That the answering defendants are entitled to a set off for the entire settlement heretofore received by the plaintiffs in satisfaction of the plaintiff’s claims herein.
"as and for a second affirmative defense
"9. That any and all legal responsibilities of the answering defendants have been fully satisfied by virtue of a prior settlement of this action with the plaintiffs.
"as and for a third affirmative defense
"10. The cause of action may not be maintained because of prior discharge, release and/or settlement of this action by the answering defendants.
"as and for a fourth affirmative defense
"11. This action cannot be maintained in as much as it would result in double recovery by the plaintiffs for the same injuries.
"as and for a fifth affirmative defense
"12. The Second Third-Party Plaintiffs Complaint fails to state a cause of action as against these answering defendants, upon which relief can be granted.
*279 "as and for a sixth affirmative defense
"13. These answering defendants allege, upon information and belief, that whatever injuries and/or damages were sustained by the plaintiff at the time and place alleged in the Complaint were in whole or in part the result of the culpable conduct of the Second Third-Party Plaintiff, Smithtown General Hospital.
"as and for a seventh affirmative defense
"14. That this Court lacks jurisdiction over the defendants, ATTILIO SPAD AFORA, M.D., RALPH P. DRAGO, as Executor of the Estate of Francesco pini, m.d. and smithtown anesthesia associates, as they were not properly served pursuant to Civil Practic [sic] Law and Rules.
"as and for an eighth affirmative defense
"15. That the rights of action and/or the causes of action and/or each of them set forth in the Second Third-Party Plaintiffs Complaint, as against these answering defendants, are barred by the applicable statute of limitations.
"as and for a ninth affirmative defense
"16. That the Second Third-Party Plaintiff is not a proper party and has no standing to institute the Second Third-Party action.
"as and for a tenth affirmative defense
"17. The Second Third-Party Plaintiff is not entitled to indemnification as a matter of law.
"as and for an eleventh affirmative defense
"18. That the Second Third-Party Plaintiff was actively negligent in the care and treatment of the infant-plaintiff and is, therefore, not entitled to indemnification.
"as and for a twelfth defense
"19. That any injuries sustained by the plaintiff were caused, in whole or in part, by persons other than these answering defendants and that the liability of these answering *280 defendants, if any, is 50% or less of the total liability. Therefore, these answering defendants seek the protection afforded under CPLR 1601.”
The Hospital moved to dismiss all of these defenses except the sixth and eleventh, and this court granted this motion to the extent that all of the defenses under attack were dismissed except the twelfth, leaving the answer with the sixth, eleventh, and twelfth defenses.
Initially, the court notes that notwithstanding the settlement between plaintiffs and defendant doctors, plaintiffs are permitted to continue their action against the Hospital alone based upon the Hospital’s alleged vicarious liability for the negligence of Dr. Ambrosio, a settling party (Riviello v Waldron, 47 NY2d 297).
The Hospital is entitled to seek indemnification as a party which plaintiff avers has committed no active wrong. While General Obligations Law § 15-108 immunizes a settling tortfeasor from a contribution claim, it does not immunize such party from an indemnity claim (see, McDermott v City of New York, 50 NY2d 211), which shifts the entire loss to another to prevent an unjust or unsatisfactory result (Rosado v Proctor & Schwartz, 66 NY2d 21, 24). The economic injury the Hospital alleges it may suffer — having to pay a judgment to plaintiffs because of Dr. Ambrosio’s negligence — also entitles it to look to such other parties bound to this alleged tort-feasor by a legal relationship which requires that they answer for his acts, just as the Hospital itself is exposed to the plaintiffs.
The court now turns to the pending applications.
THE HOSPITAL’S MOTION TO REARGUE
By decision dated December 20, 1988, this court struck 9 of 10 affirmative defenses asserted by the second third-party defendant anesthesiologists after those 10 were challenged on motion by the Hospital.[1] The twelfth, which is founded on CPLR 1601 et seq., was upheld and the Hospital asks that this conclusion be reconsidered. Reargument is granted (Rodney v New York Pyrotechnic Prods. Co., 112 AD2d 410).
CPLR article 16 provides for limited liability in any claim founded on either contribution or indemnification. Unfortunately, and as is aptly noted by Judge McLaughlin with his usual wit, it certainly is true that portions of the statute have *281 all "the elegance and clarity of the Internal Revenue Code” (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C1602:l, 1990 Pocket Part, at 174). The basic concept is that a party found liable for a plaintiff’s personal injuries does not have to pay more than his equitable share of the noneconomic damages if such party is found to be 50% liable or less (CPLR 1601 [1]).
The Hospital argues that Dr. Ambrosio’s partners cannot make use of article 16 because they are derivatively liable only and therefore are not the "tort-feasors” contemplated by the statute. On its face this appears an overly narrow and unjust reading of the law; if the statute protects an actual tort-feasor, why should one responsible only through a legal relation be denied the shield?
The court need not address this argument, however, because given the nature of the Hospital’s claim (indemnification) the resolution of the motion lies in CPLR 1602, which sets forth certain limitations on the application of the article. The relevant section reads as follows:
"§ 1602. Application
"The limitations set forth in this article shall * * *
"2. not be construed to impair, alter, limit, modify, enlarge, abrogate or restrict * * * (ii) any immunity or right of indemnification available to or conferred upon any defendant for any negligent or wrongful act or omission”.
There can be little doubt that the long list of verbs written into this provision by the Legislature was intended, inter alla, to protect a party’s right to indemnification against the indemnitor’s attempt to slip away from its liability to the indemnitee by raising article 16. In the case at bar, indemnification clearly is "available to” defendant Hospital, and CPLR 1602 (2) thus prevents the second third-party defendants from defeating that right through the application of this article. Indeed, and as Judge McLaughlin points out, despite CPLR 1602 (l)’s language stating that the limitation applies to a claim for indemnification as well as one for contribution, it is difficult to see how it applies to the former. If a party liable under an indemnification theory can make use of this scheme to reduce what he owes to his indemnitee there would be a fundamental compromise of indemnification in the personal injury area, given the fact that by definition an indemnitor is wholly responsible for the indemnitee’s loss (Rosado v Proctor & Schwartz, supra; McLaughlin, op. cit., at 174,175).
*282 Further, the Hospital’s position concerning the article’s effective date has merit. It claims that although the second third-party action began after the statute became effective the main action’s commencement precedes such date and renders article 16 inapplicable to the third-party action as well. The Hospital’s view is supported by only one lower court case (Rogowski v Day Co., 130 Misc 2d 801); however, Rogowski has been cited with approval by the Appellate Division for its description of a third-party proceeding as "not separate” from, and as a mere expansion of, the main action (Reese v Harper Surface Finishing Sys., 129 AD2d 159, 164). In view of this authority, and because the main action was begun in 1977 (some nine years before the law’s effective date in 1986) the court holds that article 16 should not apply to the third-party action against the anesthesiologists notwithstanding the fact that it was commenced in 1987.
Accordingly, upon reargument the twelfth affirmative defense asserted by the second third-party defendants is stricken.
THE SECOND THIRD-PARTY DEFENDANTS’ (ANESTHESIOLOGISTS) CROSS MOTION TO REARGUE
Reargument is granted (Infosearch, Inc. v Horowitz, 117 Misc 2d 774).
Because they seek reconsideration of the decision striking defenses to the third-party action brought by a party held in on a derivative basis, the anesthesiologists raise the troublesome issue of how indemnification applies in light of General Obligations Law § 15-108. The statute reads as follows:
"§ 15-108. Release or covenant not to sue
"(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor’s equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.
*283 "(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves bim from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.
"(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.”
The leading case interpreting these provisions as they effect derivatively liable parties is, of course, Riviello v Waldron (47 NY2d 297, supra). Accordingly, the analysis of the anesthesiologists’ first four defenses (setoff, settlement, release and double recovery) must begin with the distinction drawn between contribution and indemnification by the Court of Appeals in Riviello.
A plaintiff may settle and release one tort-feasor and pursue another, but if the plaintiff recovers a judgment against the nonsettling tort-feasor the judgment will be reduced by the settlement in accord with the formulae enacted by the Legislature. However, where the third-party plaintiff has been sued derivatively only a right to indemnification arises, not contribution, and the Court of Appeals has held that it is the latter alone which is addressed by section 15-108.
The first question which must be answered here is one of several variations on the indemnity theme: in light of Riviello (supra), may a nonsettling party, liable to the plaintiff derivatively only, claim an offset for the amounts received by plaintiff in settlement of plaintiff’s claims against the active tort-feasor?[2] On this question turns disposition of the indemnitors’ defenses of setoff and double recovery, both of which are based on prior payment to plaintiffs. If the answer to the question posed is "yes,” such affirmative defenses must be stricken; otherwise the Hospital, its indemnification claim already reduced by dint of its reduced payment to plaintiffs, will see its right to recoup what it paid eroded — and the indemnitors will receive credit for what amounts to a second reduction based on plaintiffs’ receipt of their settlement money, the indemnification claim having already been diminished thereby.
*284 On the other hand, if the answer to the question is "no,” such defenses may be viable. This is so because the indemnitee, having been permitted no offset for the settlement as against the plaintiffs, will have an indemnification claim swollen by its inability to have plaintiffs charged for the moneys received from the settling tort-feasors. Therefore, to the extent that the indemnification claim contains within it the amounts already paid by the settling tort-feasor/indemnitor, the indemnitors might be faced with paying twice — with the plaintiffs the ultimate recipients of both payments. Of course, this would set the stage for a battle over who should bear the loss of the double payment, the settling tort-feasor or its indemnitee. However, the court need not address the issue because the answer to the question posed must be "yes”— assuming a recovery against the Hospital, the plaintiffs must offset and the indemnification claim must be reduced by that amount.
There can be little doubt that the statutory scheme set forth in General Obligations Law § 15-108 consistently has been held inapplicable to indemnity claims (McDermott v City of New York, supra; Riviello v Waldron, supra). Professor Siegel has commented that this interpretation has had an unfortunate effect on settlement: "when the settling tortfeasor is solely at fault and the one against whom an action is brought bears a liability entirely derivative of the settling tortfeasor, the arithmetic of § 15-108 does not apply, the plaintiff will be allowed judgment against the derivative tortfeasor undiminished by the proportion of responsibility (in this case 100%) found by the jury to belong to the settling tortfeasor, and the latter can be impleaded into the action so as to be made to indemnify the sued (the derivative) tortfeasor in full. This of course takes all incentive away from a primary wrongdoer to settle a claim, unless the injured person is also willing to release all who derive liability from him. It appears to subvert the intent of the settlement statute. The latter’s purpose is to encourage settlements by wrongdoers, and the wrongdoer from whom the law should be most enthusiastic about extracting a settlement — the culprit solely at fault in an accident — is the one deterred by this unfortunate construction of the settlement statute.” (Siegel, NY Prac § 176, at 72-73 [1987 Supp].)
However, where the statute is inapplicable because of Riviello v Waldron (supra), any judgment obtained by the plaintiff against the indemnitee should nevertheless be re *285 duced by the amount of the settlement that plaintiff already has received from the active tort-feasor/indemnitor, consistent with prior law. A double recovery by plaintiff cannot be had (see, Plath v Justus, 28 NY2d 16, 23; Rivers v State of New York, 142 Misc 2d 563). This court therefore holds that second third-party plaintiff Hospital may reduce whatever verdict awaits it by the sums paid in settlement by Dr. Ambrosio, second third-party defendant’s partner.
The court now turns directly to the defenses asserted by the second third-party defendants. First, the "setoff” defense is improperly pleaded inasmuch as the remedy of setoff is available only when based on a legally enforceable claim (Matter of Cortlandt Nursing Home v Axelrod, 99 AD2d 105 [citing 6 Williston, Contracts § 887E, at 543-558 (3d ed)], revd on other grounds 66 NY2d 169); such a separate claim is in no way alleged by the anesthesiologists against the Hospital. However, because the defense may be read as an assertion of the anesthesiologists’ right to plead and prove a prior payment relieving its liability to the Hospital to the extent of such payment (CPLR 3018 [b]; 4533-b) the court will not dismiss the defense out of hand. Nevertheless, ultimately it must be stricken. Assuming that plaintiffs recover against the Hospital, the "setoff” (first defense) will take place when the third-party plaintiff is required to pay plaintiffs, and thus the indemnity claim necessarily will be reduced by that amount. A further "setoff” by the anesthesiologists against the Hospital will result in incomplete indemnification, which is a legal oxymoron of the first order and is contrary to the spirit of the cases and statutes discussed above. The "double recovery” defense (fourth) also is stricken because the offset received by the Hospital will account for the sums paid or to be paid by second third-party defendants; the plaintiff will not be paid twice for the same injury, and so the indemnity claim will be reduced by the amount of the prior payment.
The second and third affirmative defenses (settlement and release) must also fall; in defending an indemnity claim, as opposed to one in contribution, a third-party defendant cannot rely on settlement or its release by the main plaintiff (McDermott v City of New York, supra). This would completely vitiate the rights of indemnities and render the concept of indemnification meaningless. The argument raised by the anesthesiologists to the effect that they will attempt to prove active negligence on the Hospital’s part, thus altering its claim against them from one sounding in indemnification to one in *286 contribution, is without merit as a reason to preserve the second and third defenses. At base, this argument is one which attempts to focus the court’s attention on the assertion that the Hospital is not entitled to indemnification because of the facts of the case. That remains to be seen, and the anesthesiologists will prevail and owe the Hospital nothing if the Hospital fails to prove its right to indemnity, which is, after all, an all-or-nothing proposition. If there is actual wrongdoing by the party seeking to assert an indemnification claim, that claim is not viable (County of Westchester v Welton Becket Assocs., 102 AD2d 34, affd 66 NY2d 642). However, this position is properly asserted in the sixth and eleventh affirmative defenses, which were not sought to be stricken and which are not in issue here.
Finally, the tenth affirmative defense, which asserts that the Hospital "is not entitled to indemnification as a matter of law,” cannot stand in light of the fact that should plaintiffs prevail on their derivative claim the Hospital certainly will be able to look to the second third-party defendants because of the legal relationship between the tort-feasor and his partners (Fanelli v Adler, 131 AD2d 631; Zuckerman v Antenucci, 124 Misc 2d 971). As stated above, it may be that the anesthesiologists can demonstrate "active negligence” on the Hospital’s part, but that is for a trial to determine. At this juncture the anesthesiologists’ allegations concerning the Hospital’s culpable conduct do not alter the fact that the second third-party claim is based on the very real possibility of payment by the Hospital for the acts of the second third-party defendant’s partner, Dr. Ambrosio. As pleaded, the indemnification claim thus has legal vitality, and the tenth defense must be stricken.
THE CROSS MOTION TO DISMISS BY THIRD-PARTY DEFENDANTS (SURGEONS)
The third-party complaint at issue here must be dismissed. As stated above, the Hospital may look to the alleged tortfeasor anesthesiologist or his partners in indemnification if the Hospital is forced to pay under the derivative theory asserted by plaintiffs.[3] However, indemnity cannot lie against the surgeons because the party seeking indemnification will *287 have to pay over to the plaintiffs in only one circumstance— specifically, that Dr. Ambrosio is found to have done the actual damage and that the law and the facts require that the Hospital answer for his acts.
By limiting their claim against the Hospital to one premised on the Hospital’s relationship with the treating anesthesiologist and by withdrawing all other claims with prejudice, plaintiffs have insured that the Hospital never will be faced with paying for the acts of the surgeon. Even assuming that Dr. Liefrig did, in fact, contribute to the infant’s injuries, the Hospital cannot look to him inasmuch as he cannot be responsible for the Hospital’s loss should the plaintiffs prevail on their remaining claim. Whether it sounds in contribution or indemnification, or both, the essence of a third-party claim is that a defendant "may proceed against a person not a party who is or may be liable to him for all or part of the plaintiff’s claim against him” (CPLR 1007; emphasis added). This result would be different, of course, had plaintiffs not withdrawn all their claims except the one asserting the Hospital’s liability for the acts of Dr. Ambrosio, which withdrawal was made a matter of record with the approval of the court.
While the court has found no authority directly treating this unusual procedural circumstance, dismissing the third-party action against the surgeons would seem the proper result inasmuch as the indemnity concept is intended to prevent unjust enrichment (State of New York v Stewart’s Ice Cream Co., 64 NY2d 83, 88). In the present case, the unfairness would arise from the Hospital’s bearing the financial burden imposed on it by dint of its alleged relationship with Dr. Ambrosio. The Hospital will not be paying for the surgeon’s acts, and thus should not be able to look to the surgeon or those bound to him in law for reimbursement.
Further, there can be no claim in contribution against the surgeons because General Obligations Law § 15-108 (b) clearly immunizes them, whether such claim is asserted in a cross claim or in a separate action. Inasmuch as neither the contribution nor the indemnity claim can stand the surgeons are entitled to a dismissal of the Hospital’s claims against them (see, County of Westchester v Welton Becket Assocs., supra).
As these multiple applications indicate, the plaintiffs’ action against the Hospital, though permissible, leaves in its wake a series of issues which by their nature do not permit counsel to *288 follow easily discerned principles as they strive to represent their clients’ interests. It is this court’s hope that the appellate courts or the Legislature will provide further guidance through the thicket.

. As noted earlier, the sixth and eleventh were not included in the application. The anesthesiologists had asserted a total of 12 in their answer.

. The anesthesiologists themselves are sued as the partners of the alleged active tort-feasor, but inasmuch as they will have to answer for his acts and were in fact released by plaintiffs (with their partner) in exchange for moneys received by plaintiffs, the distinction between Dr. Ambrosio and his partners is not material to this aspect of the decision.

. Dr. Ambrosio has not been named by the Hospital in its third-party complaint, although he was named in the Hospital’s cross claim in the main action.