502

ASTOR COVER et al., Respondents, v HELEN COHEN, as Adminis-
tratrix of the Estate of IRVING COHEN, Deceased, Appel-
lant, GENERAL MOTORS CORPORATION, Respondent, and
SUPERINTENDENT OF INSURANCE, as Liquidator of CONSOLI-
DATED MUTUAL INSURANCE COMPANY, Intervenor-Appel-
lant, et al., Defendant.

Second Department, December 30, 1985

## APPEARANCES OF COUNSEL

*Shea & Gould (Arthur D. Felsenfeld* and *Linda M. Brothers* of counsel), for appellant.

*William F. Jerome (Herzfeld & Rubin, P. C. [Herbert Rubin, Edward L. Birnbaum* and *David B Hamm]* of counsel), for intervenor-appellant.

*Lipsig, Sullivan & Liapakis, P. C. (Emilio Nunez, Pamela Anagnos Liapakis, Jay W. Dankner* and *Cheryl Eisberg Moin* of counsel), for Astor Cover and another, respondents.

*Simpson Thacher & Bartlett (Kenneth R. Logan* and *Irene S. Alpert* of counsel), for General Motors Corporation, respondent.

## OPINION OF THE COURT

MANGANO, J. P.

In the instant tort action, the jury found in favor of the plaintiffs and against the defendants General Motors Corporation (General Motors), Kinney Motors Inc. (Kinney) and Cohen on the issue of liability, apportioned fault between the defendants and fixed plaintiffs' damages. An appropriate judgment was then entered. Upon an appeal by the defendant General Motors, the judgment of liability was reversed as against it and Kinney and a new trial as against them was granted. Thereafter, General Motors settled with the plaintiffs. The question on this appeal is whether General Obligations Law § 15-108 (a) and (b) apply, as argued by defendant Cohen, so as to reduce plaintiffs' extant and valid judgment against her

decedent's estate by the percentage of fault attributed to General Motors by the jury.

In our view, this question must be answered in the negative.

I

The instant action to recover damages for personal injuries, etc., was commenced by plaintiffs against Irving Cohen in 1974. The action arose out of an automobile accident which occurred on June 8, 1974. On that date, Irving Cohen was operating his 1973 Chevrolet, which had been manufactured by General Motors and had been purchased by him from Kinney in October 1972. During an attempt by Cohen to park the car, it shot backward at a high speed, jumped the curb, drove on the sidewalk, and crushed plaintiff Astor Cover, a pedestrian, against a wall. As a result of the accident one of Astor Cover's legs was amputated above the knee and the other had to be fitted with a brace. In August 1976, after the death of defendant Irving Cohen, the complaint was amended to add Kinney and General Motors as parties defendant and to substitute Cohen's administratrix in his stead.

After a bifurcated trial, the jury returned a verdict of liability against defendant Cohen on the theory of negligence, against General Motors on the theories of negligence and strict products liability and against Kinney on the theory of strict liability. During this first phase of the trial the jury rendered a special verdict assessing the percentage by which the fault of the respective parties contributed to the happening of the accident as follows: Irving Cohen 2%, General Motors 94% and Kinney Motors 4%. During the second phase of the trial the jury rendered a verdict on the issue of damages in favor of the plaintiff Astor Cover in the amount of $6,000,000 and in favor of the plaintiff Pearl Cover, on her derivative cause of action, in the amount of $2,000,000. Following the jury's determination, the trial court granted Kinney's motion for judgment on its cross complaint against General Motors for "indemnification as a matter of law". The trial court also granted General Motors' motion to reduce the verdict to the amounts demanded in the complaint ($3,000,000 and $1,000,000, respectively) but otherwise denied General Motors' motion for judgment notwithstanding the verdict, and, alternatively, for a new trial.

On June 10, 1981, a judgment was entered in favor of the plaintiffs and against all of the defendants in the principal sums heretofore noted.

On the ensuing appeal from the judgment entered June 10, 1981, this court, by order dated March 28, 1983 *(see, Cover v Cohen,* 92 AD2d 928), reversed the judgment and granted a new trial "upon the issue of damages only", unless plaintiffs stipulated, within a specified time, "to reduce the amount of the verdict in their favor to a total of $2,300,000 to be allocated $2,000,000 to Astor Cover and $300,000 to Pearl Cover, and to the entry of an amended judgment" *(Cover v Cohen, supra,* at p 928). Plaintiffs so stipulated, and an amended judgment in favor of plaintiffs and against all the defendants reflecting the reduced awards was entered on April 13, 1983.

Thereafter, pursuant to leave granted by the Court of Appeals *(see, Cover v Cohen,* 59 NY2d 605), defendant General Motors appealed from the order of this court to the Court of Appeals. Defendant Kinney did not seek leave, but instead filed a brief arguing that (1) the judgment against it derived wholly from the liability found against General Motors and (2) a reversal of the judgment against General Motors would necessitate a reversal of the judgment against it as well. Defendant Cohen did not seek leave to appeal to the Court of Appeals and did not file a brief on the appeal of defendant General Motors.

On February 28, 1984, the Court of Appeals reversed the order of this court and granted a new trial as to both General Motors and Kinney due to certain evidentiary errors committed during the trial *(see, Cover v Cohen,* 61 NY2d 261). The judgment was left intact as against the estate of Cohen, since his administratrix had not appealed.

Thereafter, plaintiffs restored the action as against General Motors and Kinney to the Trial Calendar.

By notice of motion dated May 10, 1984, plaintiffs moved for an order compelling defendant Helen Cohen, as administratrix of the estate of Irving Cohen, to pay plaintiffs the sum of $701,244.97, representing the full $100,000 limit of an insurance policy issued to Cohen by the Consolidated Mutual Insurance Company (Consolidated), and the sum of $601,244.97, representing all the interest which had accumulated on the original judgment against Cohen from June 10, 1981, the date it was entered, until May 10, 1984.

In support of plaintiffs' motion, counsel stressed the fact (1) that the judgment against Cohen, which exceeded the maximum limit of Cohen's insurance policy, had not been disturbed

by the Court of Appeals and (2) that applicable case law held that the insurance carrier had the obligation "to satisfy any and all 'interest' which accrues following the entry of judgment".

In opposition to this motion, defendant Cohen alerted the court to the fact that by order of the Supreme Court, Kings County, dated May 31, 1979, the Superintendent of Insurance was appointed liquidator of Irving Cohen's insurer, Consolidated. As a result of this insolvency, the New York State Motor Vehicle Liability Security Fund became liable for the obligation of the insolvent insurer (see, Insurance Law former § 333, now § 7604). Cohen argued that Consolidated's insolvency precluded plaintiffs from obtaining interest from the Security Fund.

By order dated June 19, 1984, Special Term held that the plaintiffs were entitled to collect Consolidated's policy limit of $100,000 from the Security Fund. However, Special Term also held that plaintiffs could not recover any accrued interest on plaintiffs' judgment against Cohen's estate, from the Security Fund (citing Insurance Law former § 333 [2], now § 7608 [c]). Plaintiffs' appeal from so much of the order dated June 19, 1984, as denied recovery of interest from the security fund is determined herewith (Cover v Cohen, 115 AD2d —).

On July 26, 1984, plaintiffs accepted General Motors' offer to settle their action as against it for the sum of $675,000.

Thereafter, by notice of motion dated September 5, 1984, defendant Cohen moved, inter alia, to "renew" so much of plaintiffs' motion which resulted in the order dated June 19, 1984, as sought payment of $100,000 from the Security Fund, based on "new facts not previously before [the] Court", i.e., the settlement between General Motors and the plaintiffs.

In support of the motion to renew, counsel for defendant Cohen argued that the settlement between General Motors and the plaintiffs triggered the applicability of General Obligations Law § 15-108 (a) and that pursuant to that provision plaintiffs' recovery against Cohen's estate had to be reduced by General Motors' equitable share of the damages, which it claimed had been fixed by the jury at 98% (94% plus the 4% attributable to Kinney for which Kinney was to be indemnified by General Motors). Accordingly, Cohen's counsel argued that the order of Special Term dated June 19, 1984, should be modified to limit plaintiffs' recovery from the Security Fund to 2% of $2,300,000, namely, $46,000.

In opposition to this motion, plaintiffs' counsel argued that in view of (1) defendant Cohen's failure to appeal from the $2,300,000 judgment entered against her husband's estate and (2) the concept of joint and severable liability, the estate was responsible for the entire amount of the judgment, "regardless of the jury's finding of two percent (2%) fault attributed to her, which only related to the defendants inter se". Plaintiffs' counsel further argued that General Motors' settlement with plaintiffs did not trigger the particular part of subdivision (a) of General Obligations Law § 15-108 relied on by Cohen, since the settlement was entered into postjudgment. Counsel for plaintiffs further stated: "The argument that Cohen is responsible for only $46,000 is ludicrous and unfounded in fact and law. At best, the settlement with [General Motors] in the sum of $675,000 may perhaps be considered a set-off from the $2,300,000 due from Cohen * * * thus leaving that defendant still responsible for an amount far in excess of the $100,000 policy in her favor. As to assets available to partially satisfy that judgment, the policy limits are obviously due and payable and subject to attachment".

By order dated November 19, 1984, Special Term denied the motion of defendant Cohen to renew, holding in relevant part that:

"Section 15-108 of the General Obligations Law of New York (McKinney's 1984) provides a formula whereby a verdict entered against a tortfeasor in a multiple party tort action is to be reduced when a plaintiff settles the action against one of the tortfeasors. The effect of the statute is to require the equitable apportionment of damages against the non-settling tortfeasor even after the judgment has been docketed. *D'Ambrosia* v. *City of New York,* 55 N. Y. 2d 454, 450 N. Y. S. 2d 149 (1982); *Rock* v. *Reed-Prentice,* 39 N. Y. 2d 34, 382 N. Y. S. 2d 720 (1976); *Bonnot* v. *Fishman,* 88 A. D. 2d 650, 450 N. Y. S. 2d 539 (2d Dept. 1982).

"The statutory apportionment established under G.O.L. Section 15-108 is available only in cases where plaintiff discharged one of the tortfeasors prior to the taking of a verdict and entry of judgment in an action. If, however, subsequent to entry of judgment plaintiff and one of the tortfeasors settled, that discharge will not in any manner affect the obligation of the defendant against whom plaintiff has previously entered judgment. *See, Mitchell* v. *New York Hospital,* 61 N. Y. 2d 208, 473 N. Y. S. 2d 148 (1984); *Rock* v. *Reed-Prentice,* 39

N. Y. 2d 34, 382 N. Y. S. 2d 720 (1976). To interpret the statute otherwise would only serve to frustrate the intent behind enactment of G.O.L. Section 15-108 which was designed to encourage settlement in tort cases and minimize litigation. If a party was allowed to avail himself of the section's apportionment in a circumstance where settlement occurred following entry of judgment, the inducement to settle prior to litigation would be greatly diminished.

"In this case judgment was entered against all parties and on appeal was overturned only as against GM and Kinney. Pursuant to the Court of Appeals decision it is clear that as against Cohen there existed prior to settlement and now exists a viable and enforceable judgment. That judgment is enforceable against Cohen to the full extent. To allow a Section 15-108 apportionment at this juncture provides to the defendant, Cohen, a benefit which was not anticipated by the enactment of the aforementioned Section."

The instant appeals arise from this determination.

## II

At common law a release, under seal, of one joint tortfeasor, released the liability of others *(Bronson v Fitzhugh,* 1 Hill 185). In due course, the same effect was given in New York to a general release not under seal *(Milks v McIver,* 264 NY 267). An exception to the general rule was carved out by the courts in the situation in which a release expressly reserved rights against other tort-feasors *(see, Gilbert v Finch,* 173 NY 455). This was due to "[p]ractical necessity and an intuitive comprehension of the innate harshness of the rule" *(see,* 1972 Report of NY Law Rev Commn, 1972 NY Legis Doc No. 65 [K], at 2).* However, the general rule remained intact in this State, despite much criticism *(see,* Prosser, Torts § 49, at 302 [4th ed 1971]; *McKenna v Austin,* 134 F2d 659), until the Legislature passed the original version of General Obligations Law § 15-108 (a) in 1972 (L 1972, ch 830, § 3). That statute, as originally enacted, provided as follows: "Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given

---

* There was no need to be concerned over the possibility of double recovery for a single injury, since any sums paid by one tort-feasor on account of an injury, reduced *"pro tanto* the amount of damages recoverable by an injured plaintiff against other joint tort-feasors" *(Livant v Livant,* 18 AD2d 383, 384, *lv dismissed* 13 NY2d 894).

to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater". This statute abrogated the common-law rule by providing that when a release was given to one or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it did not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms expressly provided *(see, Lehrl v Hudson Tr. Lines, 76 Misc 2d 625)*.

In March 1972 the Court of Appeals held, in *Dole v Dow Chem. Co.* (30 NY2d 143), that any defendant who is liable along with another for the same injury to a plaintiff is entitled to have the jury assess the respective degrees by which their fault contributed to the plaintiff's injury. Under *Dole v Dow Chem. Co. (supra)*, each of the alleged joint tort-feasors would then be able to recover against his co-tort-feasor any amount paid by him in excess of his equitable share of the liability.

Following the holding in *Dole v Dow Chem. Co. (supra)* (later codified in CPLR 1402), it was held that if plaintiff sued two defendants and one of the defendants settled with plaintiff, the nonsettling defendant could nevertheless implead the settling defendant back into the action for a *Dole* apportionment *(see, e.g., Blass v Hennessey, 44 AD2d 405)*. This holding clearly had the effect of chilling the desire of any alleged joint tort-feasor from settling his case with a plaintiff *(see,* McLaughlin, Practice Commentary, McKinney's Cons Laws of NY, Book 23A, General Obligations Law § 15-108, p 718). The Legislature recognized this problem and with a view toward strengthening the desire on the part of a joint tort-feasor to settle with an injured plaintiff *(see,* 1972 Report of NY Law Rev Commn, 1972 NY Legis Doc No. 65 [K]; 1974 NY Legis Ann, at 17; Twentieth Ann Report of NY Judicial Conference, 1975, at 224-226), it amended General Obligations Law § 15-108 in 1974 (L 1974, ch 742, § 3), by changing the wording of subdivision (a) thereof and adding new subdivisions (b) and (c). The present version of General Obligations Law § 15-108 reads as follows:

"§15-108. Release or covenant not to sue.

"(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

"(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.

"(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person".

Insofar as is pertinent to the instant appeal, General Obligations Law § 15-108 (b) provides that a release given by the injured party to one of several tort-feasors relieves the settling tort-feasor "from liability to any other person for contribution". Subdivision (a) of that section affords relief to the person who loses his right to contribution, i.e., the nonsettling tort-feasor, by providing that the plaintiff's claim against the nonsettling tort-feasor is reduced by the settling tort-feasor's equitable share of the damages (fixed by the jury pursuant to *Dole v Dow Chem. Co., supra,* and CPLR art 14), or the amount stipulated in the release, whichever is greater. The Court of Appeals has specifically held that "[t]he overall scheme and purpose of [this] section is to promote settlements in multiple-party tort cases by clearly defining the effect the settlement will have on collateral rights and liabilities in *future litigation" (Rock v Reed-Prentice Div.,* 39 NY2d 34, 41; emphasis added). Indeed, all of the cases relied on by defendant Cohen in which General Obligations Law § 15-108 (a) and (b) were held to be applicable, reflect the purpose of the statute as articulated by the Court of Appeals in *Rock v Reed-Prentice Div. (supra),* i.e., they involve situations where a settlement was entered into between a joint tort-feasor and an injured plaintiff prior to the entry of a judgment for damages

in favor of the plaintiff *(see, e.g., Mead v Bloom,* 94 AD2d 423, *affd* 62 NY2d 788; *Makeun v State of New York,* 98 AD2d 583). Moreover, the Court of Appeals in *Rock v Reed-Prentice Div. (supra,* at p 41), specifically added the following crucial warning with respect to the applicability of General Obligations Law § 15-108: "There is nothing at all to suggest that this statute was ever intended to nullify a pre-existing judgment".

Defendant Cohen argues (and is joined in that argument by defendant General Motors and the Superintendent of Insurance in their appellate briefs), that *Rock v Reed-Prentice Div. (supra)* is distinguishable in that (1) it involved General Obligations Law § 15-108 (c) and (2) a judgment was extant against the settling tort-feasor, prior to the settlement in that case. According to defendant Cohen, it was for the latter reason that subdivision (c) was held inapplicable in *Rock v Reed-Prentice Div. (supra).* In the case at bar, Cohen argues that (1) no judgment was extant against General Motors at the time of its settlement with plaintiffs, (2) General Obligations Law § 15-108 (a) and (b) therefore apply and (3) plaintiffs' judgment had to be reduced by General Motors' equitable share of fault as found by the jury, since that figure exceeds the settlement figure.

We disagree with defendant Cohen's attempt to distinguish *Rock v Reed-Prentice Div. (supra),* from the case at bar. The fact that that case involved General Obligations Law § 15-108 (c) is not a persuasive distinction, since General Obligations Law § 15-108 was enacted as one unit and cannot logically be construed to permit one but not others of its subdivisions to apply in a given case. More importantly, the Court of Appeals did not qualify the phrase "pre-existing judgment" in the limited manner suggested by defendant Cohen. Indeed, the application of General Obligations Law § 15-108 (a) and (b) in the case at bar in the manner advocated by defendant Cohen would constitute an unwarranted and unfair modification of a valid existing judgment in plaintiffs' favor against the estate of defendant's decedent. We cannot agree with such a result.

In view of our holding herein, (1) defendant Cohen is not entitled, pursuant to General Obligations Law § 15-108 (a), to a 98% reduction of the existing and valid $2,300,000 judgment entered in plaintiffs' favor against her decedent's estate, (2) plaintiffs are therefore entitled to recover $100,000 from the Security Fund, the limit of Consolidated's policy issued to Cohen, and (3) General Motors is not relieved, pursuant to

General Obligations Law § 15-108 (b), from liability for contribution to defendant Cohen.

Defendant Cohen's argument that she is entitled to a reduction of plaintiffs' judgment by the amount of General Motors' equitable share of the damages, rather than by the amount of its settlement with plaintiff, as provided for in General Obligations Law § 15-108 (a), must fall due to an additional reason, i.e., General Motors' equitable share of the damages, as originally determined by the jury, is no longer extant. By reversing the judgment against General Motors, the Court of Appeals necessarily reversed the finding of the jury regarding General Motors' equitable share of the damages. Indeed, Special Term, in a part of its order dated June 19, 1984, from which no appeal has been taken, stated:

"In its decision, the Court of Appeals did not address issues relating to damages. Its decision was limited to a review of issues which concern exclusively the liability of GM and Kinney. Based on that decision, it is apparent that the Court of Appeals intended a retrial only as to liability, i.e., that segment of the bifurcated trial in which they found error. If upon retrial of liability the jury finds against GM and Kinney, there exists an error free determination as to damages. In so deciding the Court of Appeals has eliminated the expense and time involved in trying an issue which has already been properly litigated. As such retrial in this action is only as to the issue of liability; damages against GM and Kinney, if reached, has already been established in the prior proceedings * * *

"If a verdict of liability is returned against GM or Kinney, the trial judge shall determine the role of all the parties in the new proceeding for allocating proportions of fault. It is also left to the trial judge to determine if the trial with regard to proportionality is to be conducted before the same jury that determined the issue of liability or if the case is to be heard by a new jury" (cf. Bonnot v Fishman, 88 AD2d 650).

Accordingly, the order of Special Term should be affirmed insofar as appealed from, with one bill of costs to plaintiffs payable by appellants.

BRACKEN, O'CONNOR and WEINSTEIN, JJ., concur.

Order of the Supreme Court, Kings County, dated November 19, 1984, affirmed with one bill of costs to plaintiffs.

The papers of the intervenor Superintendent of Insurance on its motion for leave to intervene as a party appellant are

deemed a timely notice of appeal from the order dated November 19, 1984 (CPLR 5520 [a], [c]).