In re JOINT SOUTHERN AND EASTERN DISTRICT ASBESTOS LITIGATION.

Anna GALLIN, Individually and as Executrix of the Estate of John Gallin, Deceased, Plaintiff,

v.

OWENS–ILLINOIS, INC., Defendant.

No. 87 CV 0450.

United States District Court, E.D. New York.

July 26, 1990.

---

Michael A. Ponterio, Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., for plaintiff.

Mark Weissman, McCarter & English, Newark, N.J., for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiff moves to set aside the jury verdict in this case. Fed.R.Civ.P. 50(b). For the reasons discussed below, the motion is denied.

### FACTS

Plaintiff went to trial on asbestos-related claims for wrongful death and product liability. Of the six defendants named in the original complaint, five settled, leaving only Owens–Illinois, Inc. to go to trial. Despite the absence of the five settling defendants, the jury was required by New York law to make specific findings as to the total amount of damages, the portion of damages attributable to wrongful death, and the percentages of liability for Owens–Illinois and for each settling codefendant. N.Y.Gen.Oblig.Law § 15–108 (McKinney 1989).

The total amount of plaintiff's verdict was $239,800.00; $55,000.00 of that verdict was for plaintiff's wrongful death claim.[1] Plaintiff now moves for a judgment notwithstanding the verdict. Fed.R.Civ.P. 50(b).

■ In substance, plaintiff makes a two-part attack, or more precisely a two-stage attack, against the jury verdict. First, she makes the general claim that the jury's allocation of percentages of liability among the settling codefendants should be stricken because defendant did not carry its burden under New York law.[2] Second, plaintiff makes the more particular claim that the jury's assessment of percentages of liability against two specific settling codefendants (Eagle–Picher and Keene Corporation) is wholly unwarranted by the evidence and should be stricken outright.

### DISCUSSION

■ Under the well-settled law in this circuit, plaintiff faces more than a mere uphill battle to disturb a jury's verdict. To grant a judgment n.o.v.:

[T]he trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. Rather, after viewing the evidence in a light most favorable to the non-moving party (giving the non-movant the benefit of all reasonable inferences), the trial court should grant a judgment n.o.v. only when (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could have only been the result of sheer surmise or conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

*Mattivi v. South African Marine Corp., "Huguenot,"* 618 F.2d 163, 167–68 (2d Cir. 1980). *See Stubbs v. Dudley,* 849 F.2d 83, 85 (2d Cir.), *cert denied,* — U.S. —, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989); *Newmont Mines Ltd. v. Hanover Insurance Co.,* 784 F.2d 127, 132 (2d Cir.1986); *Bas-*

---

1. New York law entitles plaintiff to interest on her wrongful death claim, which raises her total award under the jury's verdict to $279,400.00. N.Y.Est. Powers & Trusts Law § 5–4.3 (McKinney Supp.1990).

2. Under New York's General Obligations Law, § 15–108, plaintiff's verdict against the nonsettling tort-feasor is reduced by the settling tortfeasor's equitable share of the damages fixed by the jury, or by the amount of the settlement, or by the amount stipulated by the release, whichever is greatest. *See Cover v. Cohen,* 113 A.D.2d 502, 497 N.Y.S.2d 382 (2d Dep't 1985). The burden is with the defendant to prove the relative shares of liability to be borne by the settling tort-feasors. *Id.* at 509, 497 N.Y.S.2d at 387 (citing *Dole v. Dow Chem. Co.,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972) and CPLR art. 14). It is this burden which plaintiff says Owens–Illinois failed to carry.

*kin v. Hawley,* 807 F.2d 1120, 1129 (2d Cir.1986); *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 688–89 (2d Cir.1983).

The judgment against a defendant in a civil asbestos suit for damages "is to be reduced by the amount of plaintiff's settlements with former co-defendants, or by the amount of consideration stipulated in plaintiff's release of them, or by the proportion of fault that the jury attributes to them, whichever is greatest." *In re Joint Eastern and Southern Districts Asbestos Litigation,* 124 F.R.D. 538, 544 (E.D.N.Y.1989). Plaintiff now argues that the jury's assessment of percentage liability against the settling codefendants is too high and unwarranted by the evidence. Therefore, according to plaintiff, defendant should be allowed to offset the jury's verdict only by the actual settlement amounts, and not by the pro rata shares of liability fixed by the jury. Plaintiff's Affidavit at 8.

Plaintiff first claims that the jury's allocation of 32% liability to Eagle–Picher, a percentage equal to that assessed against defendant Owens–Illinois itself, "calls for sheer conjecture on the part of this jury." Plaintiff's Mem. at 2. Plaintiff dismisses the decedent's exposure to Eagle–Picher asbestos as *"de minimis."* Plaintiff's Reply at 1.

The record, however, does not support plaintiff's position. At trial Donald Rocovich was called as a witness. Rocovich was a co-worker of the decedent who stated on direct examination that in addition to working with defendant's asbestos product ("Kaylo"), both men also worked with asbestos cement. Feb. 28 tr. at 25. Eagle–Picher was a manufacturer of asbestos cement. On cross-examination Rocovich admitted that the decedent worked with Eagle–Picher cement and that mixing the cement created dust. *Id.* at 33–34.

Additionally, there is graphic deposition testimony of Francis Brady which was read to the jury. Brady recalled that sacks of dry cement emitted fibers when pouring "Eagle–Picher Super 66 cement out of the bag." March 5 tr. at 157–58. Brady placed the decedent at the scene and agreed that everyone there inhaled the fibers. *Id.*

Plaintiff next challenges the 15% liability allocated to Keene Corporation, another settling codefendant. The record in support of liability against Keene may be the weakest among the settling codefendants, but upon a careful review of the record and a considered recollection of the testimony at trial, I am satisfied that enough exists to support the jury's verdict.

A stipulation read to the jury *after* the Rocovich testimony stated that Keene Corporation manufactured, sold or distributed asbestos containing products. March 5 tr. at 79. When previously asked whether he and the decedent were exposed to Keene asbestos products, Rocovich did not say no. Feb. 28 tr. at 42. Rocovich instead volunteered that "[t]here used to be a shop called Keene." *Id.* The jury, in assessing credibility, may have viewed Rocovich as a biased witness who "deliberately focused" on the defendant's asbestos product only. Defendant's Mem. at 10. Again, I cannot find the evidence to be so overwhelming as to compel a reasonable jury to find no liability against Keene. *Mattivi, supra.*

Plaintiff is intent on offseting the jury verdict just by the actual dollar amount contributed by Keene to the settlement, rather than the 15% liability assigned to Keene by the jury. *See Audrieth v. Parsons Sanitarium, Inc.,* 588 F.Supp. 1380, 1381 (S.D.N.Y.1984) ("Defendant's failure to present evidence of the settling defendants' equitable shares did not constitute a waiver of their right to relief. It merely constituted a waiver of their right to relief based upon those equitable shares rather than upon the settlement amounts."); *Bonnot v. Fishman,* 88 A.D.2d 650, 450 N.Y. S.2d 539, *aff'd,* 57 N.Y.2d 870, 456 N.Y.S.2d 47, 442 N.E.2d 445 (1982) (because defendant produced "no evidence" of proportional share liability defendant allowed to offset verdict only by actual settlement amount); *see Cover, supra.* Evidence involving Keene's products did, however, come before the jury. While the issue may be close, I am satisfied that the verdict, assigning 15% liability to Keene, survives

plaintiff's post-trial attack.[3] *See Stubbs,* 849 F.2d at 85 ("The standard for granting a motion for judgment n.o.v. is appropriately strict.").

The remaining facet to plaintiff's motion to set aside the verdict concerns a broad-based claim that defendant did not prove the equitable share—or percentage—of liability of *any* any settling codefendant. I have reviewed the record, including the testimony of defendant's medical expert, and conclude that the verdict should stand. *Mattivi, supra.*

## CONCLUSION

Plaintiff's motion to set aside the verdict is denied. The parties are directed to submit a proposed Order of Judgment for entry.

SO ORDERED.

---

**3.** Ironically the issue of Keene's equitable share appears to be moot. According to the uncontested figures submitted by the defendant, Keene's 15% share of equitable liability amounts to $41,910.00. The actual considera-tion paid by Keene in settling was $55,000.00. Defendant's Mem. at 18. Thus, Keene's actual dollar settlement is an amount *greater* than the 15% liability assigned by the jury.