[763 NYS2d 588]

CHASE MANHATTAN BANK, Respondent, v AKIN, GUMP, STRAUSS, HAUER & FELD L.L.P., Defendant, and JEFFERIES & COMPANY, INC., et al., Appellants.

First Department, August 21, 2003

### APPEARANCES OF COUNSEL

*Barbara Ellis* of counsel (*Janis G. White, Martin J. Flannery, Jr., Alyssa Kelman, Joseph Latting* and *Jennifer L. Mathis* on the brief; *Locke Liddell & Sapp LLP, Pattison & Flannery* and *J.P. Morgan Chase Legal Department,* attorneys), for respondent.

*Andrew W. Stern* of counsel (*Steven E. Klein* and *Chad L. Edgar* on the brief; *Sidley Austin Brown & Wood LLP,* attorneys), for appellants.

### OPINION OF THE COURT

FRIEDMAN, J.

Nearly 30 years ago, in what the Court of Appeals has described as "an effort to strike a better balance between the often competing policies of encouraging settlement and providing for equitable sharing of liability among tort-feasors" (*Mitchell v New York Hosp.*, 61 NY2d 208, 215 [1984]), the Legislature enacted current General Obligations Law § 15-108 (L 1974, ch 742, § 3, amdg L 1972, ch 830, § 3). The statute's three subdivisions address the effect that a settlement between an injured party and a tortfeasor has on related claims by or against joint tortfeasors who do not participate in the settlement. Generally, General Obligations Law § 15-108 (a) provides that such a settlement reduces a nonsettling tortfeasor's liability to the injured party by the greater of the amount of consideration the settling tortfeasor paid for its release or, alternatively, the amount of the settling tortfeasor's equitable share of the damages under CPLR article 14. At the same time, General Obligations Law § 15-108 (b) extinguishes all claims for contribution under CPLR article 14 by a nonsettling tortfeasor against the settling tortfeasor, and General Obligations Law § 15-108 (c) extinguishes all such claims by the settling tortfeasor against a nonsettling tortfeasor.[1]

---

1. The statute reads as follows:
 "§ 15-108. Release or covenant not to sue
 "(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable 

This appeal presents the issue of whether General Obligations Law § 15-108 (b) applies (and thus extinguishes the contribution claim asserted by a nonsettling tortfeasor against a settling tortfeasor) where the settlement was agreed upon after entry of judgment against the nonsettling tortfeasor, but prior to the adjudication of the liability of the settling tortfeasor. The statute, which appears to have been drafted in contemplation of a settlement arrived at before entry of any judgment, does not expressly address whether it applies to a postjudgment settlement. It has long been established, however, that General Obligations Law § 15-108 does not apply to settlements agreed upon after there has been an adjudication of the liability of the settling tortfeasor to the injured party (*see State of New York v County of Sullivan*, 43 NY2d 815 [1977], *revg* 54 AD2d 29 [1976] *on dissenting in part op of Koreman, P.J.; Rock v Reed-Prentice Div. of Package Mach. Co.*, 39 NY2d 34 [1976]; *see also Orsini v Kugel*, 9 F3d 1042, 1048 [1993]; *Williams v Weiser*, 259 AD2d 357 [1999] [*affg* 175 Misc 2d 289 (1997)], *lv denied* 93 NY2d 810 [1999]). We now hold, as did the Second Department in *Cover v Cohen* (113 AD2d 502 [1985]), that the statute does not apply where the settlement was made after entry of judgment against the nonsettling tortfeasor, but prior to judgment against the settling tortfeasor. Accordingly, we affirm the IAS court's denial of the motion to dismiss the nonsettling tortfeasor's cause of action for contribution against the settling tortfeasor.

The facts relevant to this appeal are undisputed. Defendants-appellants Jefferies & Company, Inc. and Jefferies International Limited (collectively, Jefferies) acted as placement agent for 50-Off Stores, Inc. (50-Off), a Texas-based corporation, in a

---

in tort for the same injury, or for the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

"(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.

"(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person."

Regulation S private offering of 1.5 million shares of 50-Off's stock. In the course of the transaction, the stock was placed in an account at plaintiff-respondent bank (Chase), located in New York. Chase prematurely released the stock to the purchasers, who thereby avoided paying for it. Thereafter, in separate actions in Texas, 50-Off sued Jefferies and Chase, among other defendants, to recover its losses resulting from the theft of the stock. In the Texas litigation, 50-Off alleged, inter alia, that Jefferies had breached its contractual and fiduciary obligations by failing to conduct a sufficient due diligence investigation of the purchasers' background, and that Chase had converted the stock by prematurely releasing it to the purchasers.[2]

50-Off's federal court diversity action against Chase resulted in a jury verdict in favor of 50-Off. On December 4, 1997, the federal court entered judgment on the verdict, holding Chase liable for $10.575 million in net compensatory damages and $138 million in punitive damages. The following month, on January 16, 1998, 50-Off settled its state court action against Jefferies, in consideration of Jefferies' payment of $4.3 million. The settlement agreement, which released all of 50-Off's claims against Jefferies, provided that the $4.3 million payment was "intended to compensate [50-Off] for attorneys fees incurred by [it] in connection with this lawsuit, and in connection with events arising from the transaction and incidents which are the basis of this lawsuit."

After learning of 50-Off's settlement with Jefferies, Chase made a postjudgment motion in the federal court action for a $4.3 million credit against the judgment based on the Jefferies settlement. The motion for the credit was made in accordance with Texas law, which, as previously indicated, was applied in that action pursuant to Texas choice-of-law principles. The federal court denied Chase's motion, apparently accepting 50-Off's argument that Chase was not entitled to the credit under

---

2. 50-Off sued Chase (and several other defendants) in federal court, and Jefferies in state court. The reason for the separate state court action against Jefferies appears to have been the unavailability of federal diversity jurisdiction against one of the Jefferies entities, which, like 50-Off, was incorporated under Delaware law. Chase did not implead Jefferies as a third-party defendant in the federal court action, apparently because Texas law (which applied under Texas choice-of-law principles) barred any contribution claim by Chase based on its alleged liability for conversion, an intentional tort (see 50-Off Stores, Inc. v Banque Paribas [Suisse] S.A., 1997 WL 790739, *12-13, 1997 US Dist LEXIS 11136, *38-41 [WD Tex, May 20, 1997, No. SA-95-CA-159]).

Texas law because the payment compensated 50-Off, as set forth in the settlement agreement, only for attorney's fees, not for the underlying loss. Although Chase took an appeal from the judgment, it did not challenge the denial of the settlement credit. Chase's appeal resulted in affirmance of the compensatory damages award and vacatur of the punitive damages award (*see 50-Off Stores, Inc. v Banques Paribas [Suisse], S.A.,* 180 F3d 247 [1999], *cert denied sub nom. LOT$OFF Corp. v Chase Manhattan Bank, N.A.,* 528 US 1078 [2000]). Chase alleges that it has satisfied the affirmed judgment by paying 50-Off over $12 million.

Having paid 50-Off's judgment without reduction on account of the Jefferies settlement, Chase commenced this action, in which it asserts, among other claims, a cause of action for contribution against Jefferies, based on the contention that Chase has paid more, and Jefferies has paid less, than each one's equitable share of the liability for 50-Off's damages (*see* CPLR art 14). Jefferies moved to dismiss the contribution claim pursuant to CPLR 3211 (a) (1), (5) and (7), arguing that the release it had received from 50-Off relieved it of any potential liability for contribution pursuant to General Obligations Law § 15-108 (b). In opposition, Chase argued, among other things, that General Obligations Law § 15-108 does not govern the effect of the settlement on rights of contribution between Chase and Jefferies because the settlement was effected after judgment had been entered against Chase. Chase also argued that 50-Off's release did not relieve Jefferies of liability for contribution under General Obligations Law § 15-108 (b) because the release had not been given in "good faith," in that the settlement agreement characterized the $4.3 million payment (falsely, according to Chase) as compensation for attorney's fees, rather than for the underlying loss, solely to enable 50-Off to defeat Chase's postjudgment motion for a credit under Texas law. In response, Jefferies contended that Chase was collaterally estopped to attack the good faith of the settlement because it had made essentially the same argument in support of the unsuccessful postjudgment motion for a credit.

In the order appealed from, the IAS court denied Jefferies' motion to dismiss the contribution claim. The court found that Chase was not collaterally estopped to dispute the good faith of the settlement. The court's decision did not address Chase's argument that, regardless of the good faith of the settlement, General Obligations Law § 15-108 does not bar Chase's cause of action for contribution because 50-Off and Jefferies entered

into the settlement after judgment had been entered against Chase. We now affirm solely on that ground.[3]

We begin by reviewing the principle that General Obligations Law § 15-108 does not apply to settlements agreed upon after the adjudication of the liability of the settling tortfeasor. In *Rock v Reed-Prentice Div. of Package Mach. Co. (supra)*, the direct defendant settled with the plaintiff after judgment had been entered in favor of the plaintiff on the complaint, and in favor of the direct defendant on its third-party complaint for contribution. In rejecting the third-party defendant's argument that the judgment against it for contribution should be set aside pursuant to General Obligations Law § 15-108 (c) (which, as earlier stated, extinguishes the settling tortfeasor's right of contribution against the nonsettling tortfeasor), the Court of Appeals explained:

> "The overall scheme and purpose of the section is to promote settlements in multiple-party tort cases by clearly defining the effect the settlement will have on collateral rights and liabilities in future litigation. There is nothing at all to suggest that this statute was ever intended to nullify a pre-existing judgment." (39 NY2d at 41.)

The year after *Rock* was decided, the Court of Appeals clarified that, where a settlement postdates judgment against the settlor, the settlor's claim for contribution survives the settlement (as would also, by necessary implication, the nonsettlor's contribution claim against the settlor) even if the contribution claim had not been reduced to judgment as of the time of the settlement (*State of New York v County of Sullivan, supra*).

The present case is not directly controlled by either *Rock* or *County of Sullivan*, since the settlement here, although agreed upon after the adjudication of the nonsettlor's liability, was agreed upon *before* the adjudication of the *settlor's* liability. Moreover, applying General Obligations Law § 15-108 (b) to bar Chase's contribution claim would not directly violate the teaching of *Rock* by "nullify[ing] a pre-existing judgment" (39 NY2d at 41), since Chase has no pre-existing judgment for contribution against Jefferies, and the dismissal of Chase's contribution claim will have no effect on Chase's previously adjudi-

---

**3.** Neither party to this appeal takes issue with the IAS court's holding that New York law governs both Chase's contribution claim against Jefferies and the effect on that claim of the 50-Off/Jefferies settlement. Accordingly, we need not conduct a choice-of-law analysis of our own with regard to either of those matters.

cated (and satisfied) liability to 50-Off. Accordingly, Jefferies argues that, although its settlement has not resulted in a reduction of Chase's liability pursuant to General Obligations Law § 15-108 (a), General Obligations Law § 15-108 (b) and (c) operate to bar Chase and Jefferies, respectively, from suing each other for contribution. While this line of argument seems plausible at first glance, further analysis leads us to conclude that the statute does not govern the effect of the settlement on Chase's right to contribution from Jefferies.

As is frequently recognized, current General Obligations Law § 15-108 was part of the legislative response to the Court of Appeals' decision in *Dole v Dow Chem. Co.* (30 NY2d 143 [1972]), which created the cause of action for contribution based on equitable apportionment of liability among joint tortfeasors. The Report of the State Judicial Conference that recommended the statute's enactment (12th Ann Report of Jud Conf on CPLR, reprinted in 1974 McKinney's Session Laws of NY [hereinafter, 1974 Session Laws], at 1789-1826) observed that the then-prevailing interpretation of *Dole*—that a settling tortfeasor remained liable for contribution after the settlement—created a "disincentive to settle" (1974 Session Laws, at 1803). The new statute was intended to remove this disincentive by cutting off contribution rights against the settling tortfeasor (subdivision [b]), in exchange for which the settlor's contribution rights would be similarly extinguished (subdivision [c]), and the claim of the injured party against other tortfeasors would be reduced as provided by subdivision (a) (*id.*).

As is evident from General Obligations Law § 15-108 (a)'s provision for the reduction of a nonsettling tortfeasor's liability by no less than the settling tortfeasor's equitable share of the damages, the restoration of defendants' incentive to settle tort cases was not the sole purpose of the statute. Rather, in the words of the Court of Appeals quoted at the beginning of this opinion, the statute represents "an effort to strike a better balance between the often competing policies of encouraging settlement and providing for equitable sharing of liability among tort-feasors" (*Mitchell v New York Hosp.*, 61 NY2d at 215, *supra*). The balancing intent behind the statute is expressed in the Judicial Conference Report's characterization of the proposed legislation as an attempt to address the post-*Dole* situation "by providing a means for encouraging settlements, *while assuring that no wrongdoer is responsible for more than his equitable share of the damages incurred by the injured party*" (1974 Session Laws, at 1817 [emphasis added];

*see also Whalen v Kawasaki Motors Corp., U.S.A.*, 92 NY2d 288, 292 [1998] [the statute is "concerned with ensuring equity," and therefore provides that "nonsettling defendants should not bear more than their fair share of a plaintiff's loss"]; *Williams v Niske*, 81 NY2d 437, 443 [1993] [same]).

Consistent with the statute's intent to create a balance between the goals of encouraging settlements and equitably apportioning liability, the Judicial Conference Report makes clear that the reduction of the nonsettlor's liability to the injured party, pursuant to subdivision (a), and the extinguishment of the nonsettlor's right of contribution against the settlor, pursuant to subdivision (b), were intended as complementary features of the statute:

> "Because a settlement by one tortfeasor always benefits the remaining tortfeasors by reducing their liability at least by the amount of the settlor's equitable share [as provided by subdivision (a)], there is no need for the remaining tortfeasors to claim contribution from the settlor. Therefore, subdivision (b) of this Section explicitly provides that a settling tortfeasor will not be subject to a claim for contribution where the release has been given in good faith." (1974 Session Laws, at 1818.)

What emerges from the foregoing is that General Obligations Law § 15-108 was not intended as three independently operating measures that could be detached from each other as the circumstances might require, each having as its sole purpose the encouragement of settlements. Rather, the entire statute was intended to function together as an unified whole to define the effect a settlement would have on each potential claim not disposed of by the terms of settlement agreement itself, in order to create a balance between the two relevant legislative goals.

Further, when the intended interdependence of the three subdivisions of General Obligations Law § 15-108 is viewed in light of the Court of Appeals' holding in *Rock* that the statute cannot be applied to "nullify a pre-existing judgment" (39 NY2d at 41), it emerges that the statute simply cannot operate according to its terms vis-à-vis a nonsettling tortfeasor against whom the injured party obtained a judgment before settling its claim against another tortfeasor. Under *Rock*, the injured party's prior judgment against the nonsettlor will not be subject to reduction by the settlor's equitable share of the damages

pursuant to General Obligations Law § 15-108 (a).[4] Thus, if the remainder of the statute applied under these circumstances, the nonsettlor would be deprived of the opportunity to seek contribution against the settlor pursuant to subdivision (b) without receiving the opportunity for reduction of its liability to the injured party by the settlor's equitable share of damages pursuant to subdivision (a). As discussed above, that reduction of the nonsettlor's liability was intended, along with the extinguishment of the settlor's contribution claim pursuant to subdivision (c), to offset the loss of the nonsettlor's own contribution claim. Since the statute was not intended to be applied in a piecemeal fashion, we conclude that the 50-Off/Jefferies settlement, which was reached after judgment had been entered against Chase, does not bar Chase's contribution claim against Jefferies under General Obligations Law § 15-108 (b).

Our view that General Obligations Law § 15-108 does not govern where the settlement was agreed upon after entry of judgment against the nonsettlor, even if the settlement preceded adjudication of the settlor's liability, finds support in the Second Department's decision in *Cover v Cohen* (*supra*). In *Cover* (simplifying its facts to some extent), a judgment was entered against two defendants (General Motors [GM] and Cohen), based on a jury verdict that apportioned culpability 98% to GM and 2% to Cohen. GM appealed from the judgment, but Cohen did not. GM's appeal resulted in the reversal of the judgment against it, after which the plaintiffs settled with GM rather than retry the case. Cohen then moved to reduce the amount of the plaintiffs' judgment against her by 98% pursuant to General Obligations Law § 15-108 (a). The trial court denied the motion, and the Second Department affirmed. The Second Department found that Cohen's effort to have the judgment against her reduced by GM's 98% equitable share of the damages pursuant to subdivision (a) was foreclosed by *Rock*'s holding that the statute does not operate to "nullify a pre-existing judgment," in which the phrase "pre-existing judg-

---

4. This is not to say that *Rock* precludes reducing a pre-existing unsatisfied judgment against a nonsettlor, on the nonsettlor's postjudgment motion, by the amount paid to the injured party in a subsequent settlement with another tortfeasor. Prior to the enactment of General Obligations Law § 15-108, such pro tanto reduction of a nonsettling tortfeasor's liability was available in order to avoid a double recovery (*see Plath v Justus*, 28 NY2d 16, 23 [1971]; *Livant v Livant*, 18 AD2d 383, 384 [1963], *lv dismissed* 13 NY2d 596, 894 [1963]), and such relief remains available today under common law where the statute does not apply (*see Noble v Ambrosio*, 173 AD2d 801, 802 [1991], *affg* 151 Misc 2d 276, 284-285 [1990]).

ment" was not qualified so as to be limited to judgments for contribution (113 AD2d at 511, quoting *Rock*, 39 NY2d at 41). Cohen argued that *Rock* was distinguishable on the ground that it concerned an attempt to apply subdivision (c) of the statute, rather than subdivision (a), but the Second Department rejected this distinction, stating:

"The fact that [*Rock*] involved General Obligations Law § 15-108 (c) is not a persuasive distinction, since *General Obligations Law § 15-108 was enacted as one unit and cannot logically be construed to permit one but not others of its subdivisions to apply in a given case*." (*Id.* [emphasis added].)

Consistent with its disapproval of piecemeal application of the statute, the *Cover* Court further concluded that GM, the settling defendant, was "*not* relieved, pursuant to General Obligations Law § 15-108 (b), from liability for contribution to defendant Cohen," the nonsettling judgment debtor, by reason of the settlement (*id.* at 511-512 [emphasis added]). Thus, our holding—that General Obligations Law § 15-108 (b) does not extinguish a nonsettling tortfeasor's contribution rights against a settling tortfeasor where, as in this case, the settlement was agreed upon after entry of judgment against the nonsettlor but prior to adjudication of the settlor's liability—is in accord with *Cover*.

Finally, the fact that the judgment against Chase preceded the 50-Off/Jefferies settlement renders General Obligations Law § 15-108 inapplicable, regardless of the "good faith" of the settlement. Accordingly, that Chase may be collaterally estopped to relitigate the good faith issue is irrelevant to its ability to pursue its cause of action for contribution against Jefferies. Stated otherwise, because General Obligations Law § 15-108 (b) does not apply, the good faith of the settlement will not be at issue in the prosecution of the contribution claim. We therefore need not reach Jefferies' argument that Chase is collaterally estopped on the good faith issue, nor need we reach Jefferies' alternative argument that Chase has not alleged sufficient facts to raise an issue of good faith.

Accordingly, the order of the Supreme Court, New York County (Charles Ramos, J.), entered April 9, 2002, which, insofar as appealed from, denied Jefferies' motion to dismiss Chase's contribution cause of action against Jefferies, should be affirmed, without costs.

ANDRIAS, J.P., SAXE, ROSENBERGER and LERNER, JJ., concur.

Order, Supreme Court, New York County, entered April 9, 2002, affirmed, without costs.