■ BDO Seidman LLP, Respondent, v Strategic Resources Corporation et al., Appellants. [896 NYS2d 15]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered June 17, 2009, which denied defendants' motion to dismiss the complaint, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment dismissing the complaint.

Defendant Strategic Resources Corporation (SRC) managed the day-to-day operations of nonparty Phoenix Four, Inc., a mutual fund. SRC began providing services to Phoenix in or around 1994. At the same time, Phoenix retained plaintiff BDO Seidman (BDO) to provide it with accounting services. Phoenix terminated its relationship with BDO in or about 2002, and it stopped using SRC's services in 2004. In May 2005, Phoenix commenced an action in federal court against SRC alleging that during the time that it managed Phoenix, SRC fraudulently overstated Phoenix's assets, the value of which were directly tied to SRC's compensation. The complaint sought $150 million. In September 2005, Phoenix demanded arbitration against BDO, alleging that in 2000, 2001 and 2002, BDO was negligent in failing to discover SRC's fraud. The arbitration demand initially sought approximately $77 million, but Phoenix subsequently reduced the claim to $37.3 million.

In July 2007, while the arbitration was pending, Phoenix and SRC settled the federal court action. The settlement agreement required SRC to pay Phoenix $12.5 million and for Phoenix to

release SRC. The agreement also protected SRC in the event that BDO were to lose the arbitration with Phoenix and seek contribution from SRC. Specifically, the agreement stated: "If the Phoenix Parties settle with BDO or recover a judgment/award against BDO in the BDO Arbitration or through some other proceeding and BDO in turn asserts a claim against the SRC Parties . . . relating to the SRC Parties' . . . involvement with the Phoenix Parties, whether on the basis of contribution, indemnity or any other legal theory or claim, the Phoenix Parties agree that their settlement with or judgment/award against BDO shall be reduced to the full extent necessary to protect the SRC Parties . . . In furtherance of this settlement/judgment/award reduction obligation, the Phoenix Parties shall make payment to BDO to the full extent necessary to give force and effect to the settlement/judgment/award reduction obligation in the event the settlement/judgment/award is no longer capable of being sufficiently reduced." The agreement further required Phoenix to ask the arbitration panel to fashion a "reasoned award," which apportioned fault between BDO and SRC, so any judgment against BDO could be reduced in accordance with the agreement. Phoenix and BDO jointly requested such a reasoned award.

In its posthearing submissions to the arbitration panel, Phoenix, anticipating that it would be awarded damages, proposed a methodology for the arbitrators to use to determine by how much the judgment should be reduced to account for SRC's culpability, if any. Phoenix suggested that the arbitrators compare the amount claimed by it in the litigation against SRC ($150 million) with the amount claimed by it in the arbitration against BDO (ultimately $37.3 million). The difference between the two numbers, Phoenix reasoned, represented damage it alleged to have been caused to it solely by SRC. Using the same logic, Phoenix posited that, since it settled the litigation for $12.5 million, "only 3.1 million . . . of the $12.5 million paid by [SRC] could have been in payment of the same injuries asserted in this Arbitration." (In other words, $37.3 million is 25% of $150 million, and 3.1 million is 25% of 12.5 million.)

The arbitrators awarded Phoenix $12,578,166. They stated, in pertinent part, as follows: "The Panel interprets . . . the Settlement Agreement to require that in order for BDO to obtain a judgment reduction in this arbitration, the BDO parties have to obtain an 'apportionment of fault' between them and the parties BDO claims bore culpability. Thus, BDO would have to provide evidence in this proceeding where this Panel could reasonably conclude that [SRC] caused the *same injuries*

as did BDO and what was their contributory share of that cause." After rejecting Phoenix's position that BDO's evidence established that SRC did not share at all in BDO's culpability for Phoenix's loss, the arbitrators stated that they "believe Phoenix has offered a fair and just method for the apportionment issue." The panel then quoted the portion of Phoenix's posthearing submissions which laid out the methodology discussed above. The panel "therefore conclude[d that] it is appropriate . . . to afford [BDO] a judgment reduction of $3,125,000 on the approximately $12.6 million damages award." After adjustments to the award such as for arbitration costs, the total owed by BDO was $11,871,015.43. BDO paid that amount to Phoenix.

BDO then commenced this contribution action against SRC. The complaint alleged that SRC was liable for 100% of the award BDO paid to Phoenix, since BDO "was found liable to Phoenix in connection with [BDO]'s audits of Phoenix's year-end financial statements for the years 2000-2002 by virtue of the same facts or circumstances as are alleged herein that gave rise to [SRC]'s liability to Phoenix." SRC moved to dismiss the complaint pursuant to CPLR 3211 (a) (1), (5) and (7). SRC argued that BDO's contribution claim was barred by General Obligations Law § 15-108 (b). That section immunizes a settling tortfeasor against contribution claims by nonsettling tortfeasors so long as the nonsettling tortfeasors' liability is reduced by the greater of the settlement amount or the settling tortfeasor's equitable share of the plaintiff's damages. SRC further contended that collateral estoppel barred BDO from relitigating the issue of what its equitable share of the loss was, since the arbitration panel clearly apportioned liability between SRC and BDO and adjusted the award accordingly.

In opposition to the motion, BDO contended that the arbitrators never determined SRC's equitable share of Phoenix's loss. Accordingly, it argued that collateral estoppel did not bar it from litigating the amount by which its own liability should be reduced. BDO further claimed that, because the reduction of the arbitration award did not reflect the proper apportionment of liability in accordance with General Obligations Law § 15-108 (a), SRC was not entitled to rely on the protections of General Obligations Law § 15-108 (b). Finally, BDO asserted that SRC, in entering into a settlement agreement that expressly contemplated a contribution claim by BDO, waived the protections afforded by General Obligations Law § 15-108 (b).

Supreme Court denied SRC's motion, and it stated: "As is evidently clear by its reasoning, the Panel did not reduce the

Award rendered against [BDO] by an amount that was at least equal to [SRC]'s percentage of fault for Phoenix's damages. Rather, the Panel calculated an award reduction based upon reasoning that has no bearing on an equitable share analysis that applies to a contribution share." Accordingly, the court found that collateral estoppel did not bar BDO from litigating the issue of SRC's equitable share of Phoenix's loss, and that General Obligations Law § 15-108 (b) did not apply. In light of these findings, the court deemed the waiver issue raised by BDO to be academic and did not decide it.

General Obligations Law § 15-108 reflects a balance by the Legislature (*see Mitchell v New York Hosp.*, 61 NY2d 208, 215 [1984]). By enacting subdivision (b), it sought to encourage parties to settle claims by providing them with the certainty that all contribution claims against them would be extinguished. By implementing subdivisions (a) and (c), it granted corresponding benefits to nonsettling parties. Subdivision (a) reduced the nonsettling parties' liability by the greater of (1) the amount stipulated by the release tendered by the injured party to the settling party; (2) the amount of the consideration paid for the release; or (3) the amount of the settling party's equitable share of the damages as set forth in article 14 of the Civil Practice Law and Rules, which codified the doctrine of contribution among joint tortfeasors. Subdivision (c) ensured that parties that choose not to settle would not be exposed to contribution claims by the settling tortfeasor.

The statute is intended to work as a unified whole (*see Chase Manhattan Bank v Akin, Gump, Strauss, Hauer & Feld*, 309 AD2d 173, 180 [2003]). In other words, a settling party can only immunize itself from contribution claims of nonsettling parties if the nonsettling parties realize the concomitant benefit of having their liability reduced. In all cases, General Obligations Law § 15-108 only applies where the settling party and the nonsettling party or parties are "liable or claimed to be liable in tort for the same injury" (General Obligations Law § 15-108 [a]).

Here, BDO argues that SRC cannot invoke General Obligations Law § 15-108 (b) because the arbitration panel did not attempt, as section 15-108 (a) requires, to ascertain SRC's equitable share of BDO's total liability to Phoenix. Indeed, the methodology adopted by the arbitrators may have been flawed. If anything, the 25% ratio derived by comparing the damages demanded by Phoenix in the federal litigation against the damages sought by Phoenix in the arbitration was relevant to ascertaining the extent to which BDO and SRC were responsible for the same injuries *in the federal action*. It does not appear to

be determinative of the extent of SRC's culpability for the injuries alleged in the arbitration. Nevertheless, we need not decide the issue. That is because, as SRC argues, regardless of the outcome before the arbitration panel, BDO is collaterally estopped from relitigating the issue now.

Collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . , whether or not the tribunals or causes of action are the same" (*Ryan v New York Tel. Co.*, 62 NY2d 494, 500 [1984]). "[T]he issue must have been material to the first action or proceeding and essential to the decision rendered therein" (*id.*). The sole issue presented by this action is the apportionment of liability between BDO and SRC for the audit years 2000, 2001 and 2002, that is, the years at issue in the arbitration. This issue was clearly raised before the arbitration panel. Indeed, the arbitration award expressly stated that "in order for BDO to obtain a judgment reduction in this arbitration, the BDO parties have to obtain an 'apportionment of fault' between them and the parties BDO claims bore culpability." The intent was clearly to trigger the mechanism of General Obligations Law § 15-108, so that, in accordance with the Phoenix/SRC settlement agreement, BDO's right to contribution would be extinguished.

Further, the arbitrators did not, as BDO argues, merely determine the extent to which BDO and SRC were responsible for the "same injury." Rather, after finding that BDO and SRC were joint tortfeasors to the extent of 25% of the injury suffered by Phoenix during 2000, 2001 and 2002, they assigned 100% of the fault for that portion of the loss to SRC, and reduced the award by a corresponding amount. Even if this was an inaccurate apportionment of liability as between BDO and SRC, all that matters for collateral estoppel purposes is that a final decision on apportionment was rendered (*see Matter of Reilly v Reid*, 45 NY2d 24, 28 [1978] ["The policy against relitigation of adjudicated disputes is strong enough generally to bar a second action even where further investigation of the law or facts indicates that the controversy has been erroneously decided"]; *Ellis v Abbey & Ellis*, 294 AD2d 168, 169 [2002], *lv denied* 98 NY2d 612 [2002]).

Collateral estoppel has been described as applying where the issue in the first proceeding is "the point actually to be determined in the second action or proceeding such that 'a different judgment in the second would destroy or impair rights or interests established by the first' " (*Ryan*, 62 NY2d at 501, quoting *Schuylkill Fuel Corp. v Nieberg Realty Corp.*, 250 NY

304, 307 [1929, Cardozo, Ch. J.]). At the end of the arbitration process, Phoenix correctly assumed that, because of the award reduction, all claims as between SRC and BDO were finally resolved. It was secure in the knowledge that it would not have to absorb a further diminution in its recovery because of any unresolved claims BDO may have against SRC for contribution. However, this action exposes Phoenix to the possibility, if BDO were to prevail, of having to pay additional monies to BDO, pursuant to the terms of its agreement with SRC. Thus, a different outcome in this contribution action would certainly destroy or impair rights or interests established by the arbitration award.

BDO unquestionably had a full and fair opportunity to litigate the matter in the arbitration, thus satisfying the second requirement for the application of collateral estoppel (see Ryan, 62 NY2d at 501). Indeed, BDO requested, along with Phoenix, that the arbitrators issue a reasoned award which reduced any judgment against BDO by the extent to which SRC was liable for Phoenix's loss. Accordingly, BDO had every opportunity to present evidence and arguments regarding the offset to which it believed it was entitled as a result of the SRC/Phoenix settlement.

Finally, we reject BDO's argument that SRC waived the benefit of General Obligations Law § 15-108 (b) in its settlement agreement with Phoenix. The agreement unquestionably anticipated that BDO might make a contribution claim against SRC. However, this alone is not a knowing relinquishment by SRC of the right to rely on the protection of the statute. In support of its waiver argument, BDO relies on Scotts Co., LLC v Pacific Empls. Ins. Co. (61 AD3d 464 [2009]) and LNC Invs., Inc. v First Fid. Bank, N.A. (935 F Supp 1333 [SD NY 1996]). In those cases, waiver was found because the party invoking the protections of General Obligations Law § 15-108 reserved its own right to seek contribution from other parties. In this case, SRC did not reserve such a right for itself. As is clear from the agreement between Phoenix and SRC, SRC was attempting to address every possible scenario which might defeat the purpose of the settlement, which was to finally resolve all claims arising out of SRC's relationship with Phoenix. One of those scenarios was that BDO would seek contribution from SRC, notwithstanding General Obligations Law § 15-108 (b). SRC would have no control over such an attempt by BDO and, accordingly, it was appropriate for SRC to insist on the clause and later invoke the protections of General Obligations Law § 15-108 (b). There is no legal reason why the clause should operate to SRC's detriment. Concur—Mazzarelli, J.P., Nardelli, Catterson, DeGrasse and Román, JJ.